# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **FREDERICK DARNELL and** | ) | |
| **JUDY DARNELL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. _____** |
| | ) | **JURY TRIAL DEMANDED** |
| **METROPOLITAN PROPERTY AND** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PETITION AND NOTICE OF REMOVAL

TO:   The United States District Court
Middle District of Tennessee
801 Broadway, Room 800
Nashville, TN 37203

**PLEASE TAKE NOTICE** that Metropolitan Property and Casualty Insurance Company, hereby removes this action, pursuant to 28 U.S.C. § 1441, from the Circuit Court for Williamson County, Tennessee to the United States District Court for the Middle District of Tennessee, and respectfully states to this Court as follows:

1.      On or about April 16, 2015, Frederick and Judy Darnell commenced a civil action against defendant by filing a Complaint in the Circuit Court for Williamson County, Tennessee.

2.      The plaintiffs secured service of the Complaint on the defendant on April 21, 2015. The plaintiffs' Complaint seeks damages not to exceed $1,000,000.00. Copies of the Complaint and all other pleadings filed to date in the Williamson County

Circuit Court are attached hereto and incorporated by reference herein as *Collective Exhibit A.*

3.     For the reasons stated below, this Court has jurisdiction over the state court action pursuant to 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest, and it is between citizens of different states.

I.     **This Defendant has satisfied the procedural requirements for removal.**

4.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), because it is filed "within thirty days after receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b) (2015).

5.     The United States District for the Middle District of Tennessee includes the county in which the state court action is now pending. Therefore, this Court is a proper venue for this action pursuant to 28 U.S.C. § 123(a)(3) and § 1441(a).

6.     Pursuant to 28 U.S.C. § 1446(d), the defendant has filed written notice of this removal with the Clerk of the State Court in which the action is currently pending. Copies of the Notice of Filing, together with this Notice of Removal, are being served upon plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

II.     **Removal is proper in the present case**.

7.     The amended Complaint seeks damages not to exceed $1,000,000.00 and therefore the amount in controversy of said action exceeds the sum or value of $75,000.00. *See Collective Exhibit A.*

8.    There is complete diversity between the plaintiffs and the defendant.   In the plaintiffs' Complaint, the plaintiffs admit that they are citizens and residents of the state of Tennessee. (Compl. ¶ 1).  Further, as the plaintiffs also admit in their Complaint that this defendant is a foreign corporation.   (Compl. ¶ 2).   Thus, complete diversity exists among the parties in this case.

**WHEREFORE,** the defendant respectfully removes this action from the Williamson County Circuit Court in Franklin, Tennessee, bearing docket number 2015-170 to this Court.

This 15th day of May, 2015

*Respectfully submitted,*

LEITNER, WILLIAMS, DOOLEY,
& NAPOLITAN, PLLC

BY: _____

JOSHUA A. WOLFE (BPR #23101)
**Attorneys for Defendant**
**900 South Gay Street**
**Suite 1800 – Riverview Tower**
**Knoxville, TN  37902**
**(865) 523-0404**

## CERTIFICATE OF SERVICE

I, **Joshua A Wolfe**, the undersigned attorney, do hereby certify that the foregoing document has been delivered to all counsel for parties at interest in this cause by placing a true and correct copy of same in the United States mail, postage prepaid, in a properly addressed envelope, or by hand delivering same to each such attorney as follows:

*Attorney for Plaintiffs*
Thomas W. Thompson
Smith, Kling & Thompson, P.A.
4725 North Lois Ave.
Tampa, FL 33614-7046

This the 15th day of May, 2015.

BY: _____
JOSHUA A. WOLFE

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

RECEIVED

MAY – 4 2015

CIRCUIT COURT

April 22, 2015

Metropolitan Property & Casualty Ins Co
800 S. Gay Street, Ste 2021, % C T Corp.
Knoxville, TN  37929-9710
NAIC # 26298

Certified Mail
Return Receipt Requested
7012 3460 0002 8948 7632
Cashier # 19759

Re:   Frederick And Judy Darnell  V.  Metropolitan Property & Casualty Ins Co

      Docket # 2015-170

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 21, 2015, on your behalf in connection with the
above-styled proceeding. Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Williamson County
    135 4Th Avenue South, Ste. 203
    Franklin, Tn  37064-2500



**EXHIBIT**

**A**

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 5 of 87 PageID #: 5

# IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

FREDERICK DARNELL and )
JUDY DARNELL, )

      Plaintiffs, )

v. )
                      )

METROPOLITAN PROPERTY AND )
CASUALTY INSURANCE COMPANY, )
                      )

      Defendant. )
                     )

**JURY DEMAND**

Case No. **2015-170**

**RETURN**
To Circuit Court

**RECEIVED**

MAY – 4 2015

CIRCUIT COURT

## SUMMONS

**THE STATE OF TENNESSEE**
**TO EACH SHERIFF OF THE STATE:**

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition, Request for Admissions, Request for Production and Interrogatories in this action on the Defendant(s)

**METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**
c/o Secretary of State
Department of State
Division of Service
Suite 1800
James K. Polk Building
Nashville, Tennessee 37243-0306

    Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, whose name and address is

Thomas W. Thompson, Esquire
Smith, Kling & Thompson, P.A.
4725 N. Lois Avenue
Tampa, Florida 33614

within twenty (20) days after service of this Summons upon that Defendant, exclusive of the day of service, and to file the original of the written defenses with the Clerk of the court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED   4- 17   , 2015

Clerk of the Court

By: _Anne Ridens Pc_
As Deputy Clerk

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

Check one: (1) or (2) are for the return of an authorized officer or attorney; an attorney's return must be sworn to; (3) is for the witness who will acknowledge service and requires the witness's signature.

☐ 1.  I certify that on the date indicated below I served a copy of this summons on the witness stated above by _____

☐ 2.  I failed to serve a copy of this summons on the witness because _____

☐ 3.  I acknowledge being served with this summons on the date indicated below:

DATE OF SERVICE: _____

SIGNATURE OF WITNESS, OFFICER OR ATTORNEY: _____

Signature of Notary Public or Deputy Clerk: _____

Commission Expires: _____

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case no. _____ to the defendant _____, on the _____ day of _____, 20_____.
I received the return receipt, which had been signed by _____ on the _____ day of _____, 20_____. The return receipt is attached to this original summons to be filed by the Circuit Court Clerk.

_____
Signature

Sworn to and subscribed before me on this ___ day of _____ 20_____.

Commission Expires: _____

_____
Signature of Notary Public or Deputy Clerk

## CERTIFICATION (IF APPLICABLE)

I hereby certify this to be a true and correct copy of the original summons issued in this case.

_____
CIRCUIT COURT CLERK

For ADA assistance, please call ADA coordinator: 615-790-5428

COPY

**IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| **FREDERICK DARNELL and** | ) | |
| **JUDY DARNELL,** | ) | **JURY DEMAND** 2015-170 |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| **METROPOLITAN PROPERTY AND** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

FILED
WILLIAMSON COUNTY
CIRCUIT COURT
2015 APR 16 AM 9:22

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, **FREDERICK DARNELL and JUDY DARNELL**, for their Complaint against the Defendant, **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**, ("Defendant"), would respectfully show and allege to the Court as follows:

## PARTIES AND JURISDICTION

1.      Plaintiffs, FREDERICK DARNELL and JUDY DARNELL, own and reside at the property located at 1177 Cross Creek Drive, Franklin, TN 37067.

2.      Defendant, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, is a for-profit foreign insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee.  The registered agent for service of process of METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY is the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee, 37243.

1

3.     Plaintiffs' claim for relief arises from a covered loss to their property located at 1177 Cross Creek Drive, Franklin, TN 37067 (the "Property"). Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

## FACTS

4.     At all times material hereto, Plaintiffs have been the owner of the Property.

5.     Plaintiffs renewed or procured a policy of homeowners' insurance, policy number 0461834350 ("Policy"), from Defendant covering the above-referenced property.  Attached hereto as **Exhibit A.**

6.     In consideration of monies paid by Plaintiffs to Defendant, the "all-risk" Policy was issued, insuring the Plaintiffs' property against all risks which are not excluded, including sinkholes.  The insurance policy provided dwelling insurance coverage, in addition to other coverages.

7.     Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.     On or about May 10, 2014, while the Policy was in full force and effect, the dwelling located on the Property was damaged by a covered peril.

9.     A notice of loss and damages was properly and promptly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

10.     Plaintiffs have fulfilled all of the duties after the Loss that were imposed upon them by the Policy.

11.     Without consulting Plaintiffs in its choice of engineer, Defendant sent Barge, Waggoner, Sumner & Cannon, Inc., ("BWSC") to Plaintiffs' Property who denied the damage to the Property was caused by sinkhole activity without performing a subsidence investigation.

2

12.     Given concerns with the propriety of BWSC's testing and report, as adopted by Defendant, Plaintiffs requested Defendant perform additional testing at the Property and Plaintiffs retained the services of Plaintiffs' own geotechnical engineering firm to conduct a review of this matter.

13.     Defendant again retained BWSC who confirmed sinkhole activity at the Property after performing the additional investigation.

14.     Upon information and belief, the geotechnical engineering firm retained by Defendant, BWSC, failed to comply with standard geotechnical engineering practices and procedures in completing its inspection, testing, and evaluation of the damages to Plaintiffs' Property.

15.     Defendant, although admitting the existence of sinkhole activity on the Property, has taken the position that the damage to the Property consistent with sinkhole activity was not caused in fact by the confirmed sinkhole on the Property.

16.     On or about February 26, 2015, Defendant sent correspondence denying Plaintiffs' claim based on the BWSC reports.

17.     On or about March 10, 2015, Plaintiffs, through counsel, sent a Formal Demand to Defendant requesting that Defendant consider all of the evidence in order to make an informed decision concerning the Plaintiffs' Property and the claim and that the full amount be paid. Attached hereto as **Exhibit B**.

18.     Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained. Defendant's refusal to promptly and fully pay Plaintiffs the amounts owed as a result of the Loss is without justification.

3

19.     Defendant's refusal to pay the money and benefits due and owing Plaintiffs under the Policy has caused Plaintiffs to seek legal counsel and pay them a reasonable fee for their services, and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which they are entitled.

## BREACH OF CONTRACT

20.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 19 above as though fully set forth herein.

21.     The Policy issued by Defendant to Plaintiffs is a binding contract, and is supported by valid consideration.

22.     Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the covered damage caused to the Property.  Specifically, Defendant's breach of contract includes its failure and refusal to pay all amounts owed to Plaintiffs for the damage to the Property and its failure and refusal to pay all amounts owed to Plaintiffs for all benefits due under the Policy.  Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

23.     As a result of Defendant's breach of contract, Plaintiffs have sustained substantial compensable losses for the amounts claimed under the Policy.  Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss.

24.     Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages.  *See, e.g., Riad v. Erie Ins.*

*Exchange*, 2013 Tenn. App. LEXIS 712, \*47 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to properly investigate the Property as required under the Policy and state statute; (2) failed to effectuate a prompt and fair settlement of Plaintiffs' claim when liability was clear; (3) unjustly refused and/or failed to pay Plaintiffs' claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim; (5) failed to investigate the Plaintiffs' claim in a prompt and thorough manner; (6) represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage and (7) engaged in such acts as are set forth in paragraphs 26 and 27 below. Plaintiffs seek, and are entitled to, punitive damages.

## BAD FAITH

25.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 24 above as though fully set forth herein.

26.     Defendant's failure and refusal to pay the amounts owed to Plaintiffs is arbitrary and capricious and is not in good faith, and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for Plaintiffs' covered loss as required by the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked. Defendant's bad faith failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured

5

loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

27.      The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth more fully below. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously refused to fully pay Plaintiffs' valid claim and withheld monies and benefits rightfully due Plaintiffs.  The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

     (A)    Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

     (B)    Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner;

     (C)    Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims;

     (D)    Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim;

     (E)    Defendant's intentional refusal to pay Plaintiffs' claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

     (F)    Defendant's intentional refusal to fully investigate Plaintiffs' claim and to obtain all available information before denying the claim and alleging it has no further obligations to Plaintiffs;

6

(G) Defendant's engaging in acts and practices toward Plaintiffs that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiffs;

(H) Defendant's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis; and

(I) Defendant's use of biased and unqualified "experts" to avoid its contractual obligations to Plaintiffs.

28. Defendant's bad faith is further evidenced by the all of the facts and allegations set forth in this Complaint, together with the following non-exclusive facts:

- Defendant failed to advise Plaintiffs that it regularly hires BWSC to conduct outcome-oriented investigations on homeowners' properties.

- Defendant's engineer, BWSC, failed to perform an initial subsidence investigation adequate to eliminate the existence of sinkhole activity within a reasonable degree of professional probability.

- Defendant regularly hires the same outcome-oriented engineers in order to achieve its desired "engineering" outcome.

29. In so acting, Defendant intended to and did injure Plaintiffs in order to protect its own financial interests, and should be punished via the twenty-five percent (25%) statutory bad faith penalty.

30. Although Defendant is aware of BWSC's flawed findings, Defendant blindly adopted BWSC's inappropriate recommendation to the Property in an intentional placement of its own financial interests before Plaintiffs' interest in safeguarding their home.

31. As discovery and depositions progress, Plaintiffs anticipate additional bad faith acts and/or omissions will come to light.

32. Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have

7

resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, as a result of the foregoing, Plaintiffs would respectfully request that this Honorable Court award a judgment to Plaintiffs as follows:

A.   For compensatory damages against Defendant not to exceed $1,000,000.00;

B.   For the statutory bad faith penalty not to exceed 25% of Plaintiffs' claim under the Policy;

C.   For all costs incurred by Plaintiffs as a result of this action;

D.   For pre- and post-judgment interest; and

E.   For such other further and general relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By: Thomas W. Thompson

**Smith, Kling & Thompson, P.A.**
Thomas W. Thompson, Esquire
thompson@smithkling.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:     (813) 254-1800
Facsimile:     (813) 254-1844
Attorney for Plaintiffs

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 15th, 2015 a true and accurate copy of the foregoing document was filed electronically with the Clerk's office by using the CM/ECF system and served on counsel reflected below through this Court's electronic filing system.

**SMITH, KLING & THOMPSON, P.A.**

_/s/ Thomas W. Thompson_
Thomas W. Thompson, Esquire
BPR: 030659

| | |
|---|---|
| **Policy Number:** 0461834350<br>**Policy Term:** From 05/01/2014 to<br>05/01/2015, 12:01 A.M. Standard Time<br>at the location of the property<br>insured as stated in the policy. | Page 1 of 2<br><br>**Renewal Effective Date:** 05/01/2014<br><br>**Bill To:** Mortgagee |
| **Named Insured:**<br>FREDERICK DARNELL<br>JUDY DARNELL<br>1177 CROSS CREEK DR<br>FRANKLIN TN 37067 | **First Mortgagee:** Loan 4502254473<br>JPMORGAN CHASE BANK NA ISAOA ATIMA<br>PO BOX 100564<br>FLORENCE SC 29502 |

**The residence premises covered by this policy is located at:**
1177 CROSS CREEK DR          FRANKLIN      TN    37067

| Basic Policy Coverages | Limits | Premiums |
|---|---|---|
| Blanket Property Limit: | $ 1,004,400 | |
| A - Dwelling | | |
| Amount: $ 502,200 | Included in Blanket Property Limit | $ 1,324.00 |
| B - Private Structures | | |
| Amount: $ 125,550 | Included in Blanket Property Limit | |
| C - Personal Property | | |
| Amount: $ 376,650 | Included in Blanket Property Limit | |
| F - Personal Liability: | | |
| Each Occurrence | $ 100,000 | |
| G - Medical Payments to Others: | | |
| Each Person | $ 1,000 | |
| Loss of Use | Actual Loss Sustained with Time Limit | |

**Causes of Property Loss**
Comprehensive Perils

**Building Property Loss Settlement**
Coverage A Plus

**Personal Property Loss Settlement**
Replacement Cost on Contents

**Additional Coverages**
Ordinance or Law Limit          Included in Blanket Property Limit
Personal Injury Coverage
Back Up of Sewer, Drain and Sump Pump Coverage
  $10,000 Limit, $1,000 Deductible

**Current Annual Premium: $ 1,324.00**

**Deductible(s)**
$1000 deductible applies to each loss.

**Forms and Endorsements:**      HP1000 0902      HP2300 0205      HP3500 0904      HP4410 0110
HP5100 0105      HP6200 0205      HP7000 0902      HA01TN 0706      HF3100 0902

**Newly Added Endorsements:**      C114A 0512

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000

Printed in U.S.A. 0298

| Policy Number: 0461834350 | Page 2 of 2 |
| Policy Term: From 05/01/2014 to 05/01/2015, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Renewal Effective Date: 05/01/2014 |
| | Bill To: Mortgagee |

**Discounts** for the following have been included in the current annual premium:

* 14% MetRewards Discount
* 30% Home Policy Plus, Including Automobile

## Rating Information

| | | |
|---|---|---|
| Territory 60 | 1 Family | Masonry Veneer Construction |
| Composition Roof | Insured DOB 11/25/1952 | Built in 1985 |
| Roof Age 04 Years | Co-Insd DOB 01/07/1954 | Updated in 2010 |

## Messages

Your policy has been renewed. Please read all items shown on this renewal Declarations Page to ensure that you have your desired protection.

Inflation Protection: Your Blanket Property Limit for Coverages A, B, C, reflects the construction price index increase of 3.5%.

The cost of any coverage indicated as "Incl" is included in the Basic Policy Coverages premium amount.

This Policy Does Not Provide Coverage for Flood Damage.

Your package policy includes a Single Deductible Loss Clause which protects you from paying more than one deductible in the event of a covered loss that affects more than one product. Please read the endorsement carefully for details.

Please note the address shown on this Declarations Page has been changed to meet US Postal standards.

## Additional Insured/Mortgagee

First Mortgagee: Loan 4502254473
 JPMORGAN CHASE BANK NA ISAOA ATIMA
 PO BOX 100564
 FLORENCE SC 29502

| | |
|---|---|
| For service, call 800-422-4272 or write to: MetLife Auto & Home P.O. Box 48020 Dayton, OH 45475 For claims, see Claim Directory. | Your representative is: GEORGE F OAKES Tel: 615-778-2200 J05-193-1 |

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

# MetLife Auto & Home®

# Homeowners
# Insurance Policy

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL 8100-000

Printed in U.S.A. 0902

THE COMPANY NAMED IN THE DECLARATIONS
(A Stock Insurance Company)
Administrative Offices: Warwick, Rhode Island

# HOMEOWNERS INSURANCE POLICY

## TABLE OF CONTENTS

**HOME**                                                                    PAGE A-1

    **INSURANCE AGREEMENT AND DECLARATIONS**                          A-1
    **GENERAL DEFINITIONS**                                          A-1
    **SECTION I - COVERAGES**                                        B-1
        Coverage A - Dwelling
        Coverage B - Private Structures

**CONTENTS AND ADDITIONAL COVERAGES**                                        C-1

    **COVERAGE C - PERSONAL PROPERTY**                               C-1
        Personal Property Covered
        Special Limitations on Certain Property
        Personal Property Not Covered
    **SECTION I - ADDITIONAL COVERAGES**                             D-1
        Loss of Use
        Debris Removal
        Reasonable Repairs
        Fire Department Charges
        Emergency Removal of Property
        Emergency Living Expense
        Refrigerated Contents
        Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money
        Data and Records
        Lock Replacement
        Reward Coverage
        Trees, Shrubs, Plants and Lawns
        Loss Assessment
        Land
        Volcanic Action
        Collapse
        Inflation Protection
        Landlord's Furnishings
        Fungus and Mold Remediation

**CAUSES OF PROPERTY LOSS**                                                  E-1

    **SECTION I - LOSSES WE COVER**                                  E-1
        Loss Deductible Clause
        Coverage A - Dwelling
        Coverage B - Private Structures
        Coverage C - Personal Property
    **SECTION I - BROAD NAMED PERILS**                               E-1
    **SECTION I - LOSSES WE DO NOT COVER**                           F-1

**PROPERTY LOSS SETTLEMENT**                                                 G-1

    **SECTION I - HOW WE SETTLE A PROPERTY LOSS**                    G-1
        Coverage A - Dwelling and Coverage B - Private Structures
        Coverage C - Personal Property

**PROPERTY CONDITIONS**                                      PAGE H-1

    **SECTION I - CONDITIONS**                              H-1
        Insurable Interest and Limit of Liability
        What You Must Do After a Loss
        Our Settlement Options
        Loss
        Loss to a Pair or Set
        Abandoned Property
        Appraisal
        Rights and Duties of Mortgagee
        No Benefit to Bailee

**LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES**       I-1

    **SECTION II - LOSSES WE COVER**                        I-1
        Coverage F - Personal Liability
        Coverage G - Medical Payments to Others
    **SECTION II - LOSSES WE DO NOT COVER**                 I-1
        Coverage F - Personal Liability and Coverage G - Medical Payments to Others
        Coverage F - Personal Liability
        Coverage G - Medical Payments to Others
    **SECTION II - ADDITIONAL COVERAGES**                   J-1
        Damage to Property of Others
        Claim Expenses
        First Aid Expenses
        Loss Assessment
    **SECTION II - CONDITIONS**                             K-1
        Your Duties in the Event of an Accidental Loss
        What an Injured Person Must Do Under Coverage G - Medical Payments to Others
    **OPTIONAL COVERAGES**                                  L-1
        Earthquake
        Home Computer
        Private Structures Rented to Others
        Business Pursuits
        Watercraft Liability
        Incidental Business Occupancy by You

**GENERAL CONDITIONS**                                       M-1

        Policy Period
        Concealment or Fraud
        Conformity to Statute
        Death
        Policy Changes
        Assignment
        Bankruptcy or Insolvency
        Our Recovery Right
        Lawsuit Against Us
        Other Insurance and Service Agreement
        Premium
        Cancellation
        Nonrenewal

# HOME

## INSURANCE AGREEMENT AND DECLARATIONS

This insurance policy is a legal contract between **you** (the policyowner) and **us** (the Company named in the Declarations). It insures **you** and **your** property for the various kinds of insurance shown in the Declarations. The Declarations are an important part of this policy. By acceptance of this policy, **you** agree that the statements contained in the Declarations and in any application are **your** true and accurate representations. This policy is issued and renewed in reliance upon the truth of such representation. The terms of this policy impose joint obligations on all persons defined as **you.** This means that the responsibilities, acts and failures to act of a person defined as **you** will be binding upon another person defined as **you.**

This policy is issued and renewed in reliance upon payment of the required premium. The exact terms and conditions are explained in the following pages.

## GENERAL DEFINITIONS

The following words and phrases appear repeatedly throughout this policy. They have a special meaning and are to be given that meaning whenever used in this policy or any endorsement which is part of this policy.

**"Actual cash value"** means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence.

**"Bodily injury"** means any physical harm to the body including any resulting sickness or disease. This term includes required care, loss of services and death if it is a result of such physical harm, sickness or disease. **Bodily injury** does not include:
1. any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism;
2. the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person;
3. the actual, alleged or threatened sexual molestation of a person; or
4. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless the direct result of physical harm.

**"Business"** or **"business purposes"** means:
1. any full or part time activity of any kind engaged in for economic gain, and the use of any part of any premises for such purposes; and
2. **your** property rented or held for rental by **you.** Rental of the **residence premises** is not considered business when:
   A. it is rented occasionally for use as a residence;
   B. a portion is rented to no more than two roomers or boarders; or
   C. a portion is rented as a private garage.

**"Computer"** means a programmable electronic device that can store, retrieve and process data.

**"Fungus and mold"** means fungi, mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents or by-products produced by any of these.

**"Insured premises"** means:
1. the **residence premises** described in the Declarations;
2. any other premises specifically named in the Declarations and used by **you** as a residence;
3. any premises acquired by **you** during the term of this policy and used by **you** as a residence;
4. any premises used by **you** in connection with a premises described in 1., 2. or 3. above;
5. any premises not owned by **you** but where **you** may be temporarily residing;
6. any part of a premises occasionally rented to **you** for other than **business purposes**;
7. vacant land owned by or rented to **you**, other than farm land;

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 22 of 87 PageID #: 22

8.  land owned or rented by **you** on which a one or two family dwelling is being constructed for **your** use as a residence; and
9.  individual or family cemetery plots or burial vaults owned by **you.**

**"Media"** means the storage device upon which software is stored. This includes blank cassette tapes or disks used solely with the **computer** or **peripheral device.**

**"Medical expenses"** means reasonable expenses for necessary medical, surgical, x-ray, chiropractic, a mbulance, hospital, professional nursing, funeral and dental services, including prosthetic devices.

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy.

**"Peripheral device"** means any unit used to operate with the **computer** system. This includes tape or disk drives or printers.

**"Personal injury"** means injury arising out of one or more of the following offenses:
1.  false arrest, false imprisonment or wrongful detention;
2.  malicious prosecution;
3.  wrongful eviction from or wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or in behalf of its owner, landlord or lessor;
4.  oral, written or representational publication of material that slanders or libels a person or organization;
5.  oral statements or publication of writings or pictures that falsely disparages a person's or organization's goods, products or services; or
6.  oral statements or publication of writings or pictures that violates a person's right of privacy.

**"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

**"Purchased software"** means information or a program that is stored on a storage device such as a magnetic tape or disk for use on a **computer,** and has been purchased from another party.

**"Residence employee"** means **your** employee while performing duties arising out of and in the course of employment by **you** in connection with the maintenance or use of the **residence premises,** including similar duties elsewhere, not in connection with **your business.** This includes an employee leased to **you** by a labor leasing firm under an agreement with **you.**

**"Residence premises"** means:
1.  a one, two, three or four family dwelling used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches; or
2.  if **your** dwelling is a condominium, cooperative or leased property, the premises reserved for **your** exclusive occupancy and use, used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches if these are reserved for **your** exclusive occupancy and use.
This does not include any portion of a premises used for **business purposes.**

**"We," "us,"** and **"our,"** mean the Company named in the Declarations.

**"You"** and **"your"** mean:
1.  the person or persons named in the Declarations and if a resident of the same household:
    A.  the spouse of such person or persons;
    B.  the relatives of either; or
    C.  any other person under the age of twenty-one in the care of any of the above; and
2.  under **SECTION II** only:
    A.  any other person or organization legally responsible for loss caused by animals or watercraft owned by **you. We** will not cover any such person or organization using or having custody of animals or watercraft in any **business** or without **your** permission; and

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 23 of 87 PageID #: 23

    B. with respect to the use of any vehicle, with **your** consent, to which this policy applies:
      1. any person while engaged in employment by **you;** or
      2. other persons using the vehicle on the **insured premises.**

## SECTION I - COVERAGES

### COVERAGE A - DWELLING
1. **Dwelling Owners. If your** dwelling is a one, two, three or four family dwelling, **we** cover:
    A. the dwelling owned by **you** on the **residence premises;** and
    B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

2. **Condominium Owners. If your** dwelling is a condominium or cooperative, **we** cover:
    A. the alterations, appliances, fixtures, and improvements and items of real property attached to **your** unit on the **residence premises;** and
    B. property which is **your** insurance responsibility under a corporation or association of property owners agreement.

3. **Renters. If your** dwelling is leased property, **we** cover the alterations, appliances, fixtures and improvements made or acquired at **your** expense which are part of the building and contained within the **residence premises** occupied, but not owned, by **you.**

**We** cover building equipment, materials and supplies, to the extent of **your** financial interest, located on or adjacent to the **residence premises** for use in connection with maintenance, construction, alteration, or repair of the dwelling or private structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

### COVERAGE B - PRIVATE STRUCTURES
At the location of the **residence premises:**
1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or
2. if **your** dwelling is a condominium, cooperative or leased property, **we** cover private structures:
    A. owned solely by **you** and separated from the dwelling by clear space; or
    B. available for **your** exclusive use and which are **your** insurance responsibility under a corporation or association of property owners agreement.
    Equipment, accessories, alterations, appliances, fixtures and improvements made or acquired at **your** expense which are attached to the private structure are also covered.

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures.

**We** do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 24 of 87 PageID #: 24

# CONTENTS AND ADDITIONAL COVERAGES

## COVERAGE C - PERSONAL PROPERTY

**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

After a loss and at **your** option, this coverage may be extended to include personal property owned by:
1.   others while on that portion of the **residence premises** occupied by **you; or**
2.   a guest or **residence employee,** while the property is in a residence occupied by **you.**

If a covered loss occurs at the **residence premises, we** will pay up to the limit of liability for personal property for the location shown in the Declarations where the personal property is damaged, destroyed or stolen.

If a covered loss occurs away from **your** residence, **we** will pay up to the limit of liability shown in the Declarations for the selected single location from which the payment is to be made.

If a covered loss occurs at **your** residence not covered by this insurance or another policy for personal property issued to **you** by Metropolitan Property and Casualty Insurance Company or any of its affiliates, **we** will pay up to 10% of the Blanket Property Limit shown in the Declarations for the selected single location that provides the greatest coverage from which the payment is to be made.   Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after **you** begin to move **your** property there.

**We** will select a **residence premises** for personal property from which the payment is to be made for covered loss based upon the most favorable combination of the following:
1.   **our** limit of liability and deductible;
2.   the basis of loss settlement under **SECTION I - HOW WE SETTLE A PROPERTY LOSS;** and
3.   the perils covered under **SECTION I - LOSSES WE COVER.**
Regardless of the number of policies or insured locations providing **you** with personal property coverage, payment will be made based only on this selected location.

**Special Limitations on Certain Property**
**We** will not pay more than the following amount for each category in any one loss.  These limitations do not increase the amount of insurance under **COVERAGE C - PERSONAL PROPERTY.**

1.   **Money.** $1000 for coins and currency at face value, bullion, bank notes, medals and scrip.  It also includes stored value cards for which there exists no traceable connection to **you** or for which no account is established in **your** name.
     If Increased Coverage on Money is shown in the Declarations, then the $1000 limit is increased to the amount shown.
2.   **Securities.** $5000 for securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, stamps at face value, and tickets.
3.   **Manuscripts.** $5000 for manuscripts, including the cost to research, replace or restore the information from the lost or damaged material.
4.   **Jewelry.** $5000 for each of the following for loss by theft, misplacing or losing:  jewelry, including loose precious and semi-precious stones; watches; and furs.
5.   **Watercraft.** $1500 for watercraft, of all types, including their trailers, furnishings, equipment and outboard motors.
6.   **Trailers.** $2000 for trailers not used with watercraft.
7.   **Business Property.** $2500 for any property on the **residence premises** used or intended for use in a **business.** $500 for any property away from the **residence premises** used or intended for use in a **business.** This includes merchandise held as samples or for sale or delivery after a sale.  This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it.
     If Increased Coverage on Business Property is shown in the Declarations, then the $2500 limit for property on

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 25 of 87 PageID #: 25

the **residence premises** is increased to the amount shown and the limit of liability for loss away from the **residence premises** will be 20% of the amount shown.

8. **Computers.** $5000 for **business computers** and the **peripheral device(s), media** and **purchased software** used with them. The **media** will be covered only up to its retail value, if pre-programmed, or the retail value of the **media** in blank or unexposed form, if blank or self-programmed.

9. **Firearms.** $5000 for loss by theft, misplacing or losing of firearms and related equipment.

10. **Silverware and Goldware.** $10,000 for loss by theft, misplacing or losing of silverware and goldware. If Increased Coverage on Silverware and Goldware is shown in the Declarations, then the $10,000 limit is increased to the amount shown.

11. **Coin, Currency and Stamp Collections.** $5000 for numismatic and philatelic property for which the age, history, scarcity and condition contribute substantially to their value. Numismatic property includes coins and paper currency. Philatelic property includes postage stamps, postmarks, post cards and stamped envelopes.

12. **Memorabilia.** $10,000 for memorabilia, souvenirs, and collectors items such as trading cards, comic books, autographed merchandise and similar articles for which the age, history, scarcity and condition contribute substantially to their value. If Increased Coverage on Memorabilia is shown in the Declarations, then the $10,000 limit is increased to the amount shown.

13. Does Not Apply.

14. **Compact Discs.** $1000 for loss by theft of tapes, wires or discs while in or upon a motorized land vehicle. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

## Personal Property Not Covered

1. **We** do not cover articles separately described and specifically insured, regardless of the limit for which they are insured, by this or any other policy.

2. **We** do not cover animals, birds or fish.

3. **We** do not cover any motorized land vehicles and parts. **We** do not cover such property whether owned or operated by, or rented or loaned to **you**. This includes:
   A. their equipment and accessories; or
   B. electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motorized land vehicles. Electronic apparatus includes accessories or antennas for use with any electronic apparatus.
   The exclusion of property described in items 3.A. and 3.B. above applies only while the property is in or upon the vehicle.
   However, **we** cover unlicensed motorized land vehicles, not subject to registration, which are used solely to service and maintain residential property or designed for assisting the handicapped.

4. **We** do not cover aircraft and parts. Aircraft including self-propelled missiles and spacecraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

5. **We** do not cover property of roomers and boarders not related to **you**.

6. **We** do not cover property of tenants, whether related to **you** or not.

7. **We** do not cover property regularly rented or held for rental to others when on the **residence premises** except as granted under **SECTION I – ADDITIONAL COVERAGES** for Landlord's Furnishings.

8. **We** do not cover property rented or held for rental to others when not on the **residence premises;**

9. **We** do not cover **business** and personal data and records including such data stored in books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to property covered under **SECTION I – ADDITIONAL COVERAGES** for Data and Records.

10. **We** do not cover **media** for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

11. **We** do not cover credit cards, electronic fund transfer cards or access devices except as granted under **SECTION I – ADDITIONAL COVERAGES** for **Credit Card Protection.**

## SECTION I – ADDITIONAL COVERAGES

The deductible will not apply to Section I – Additional Coverages, except where specified in the Additional Coverage.

1. **Loss of Use.** The limit of liability for Loss of Use is the total limit for the coverages in A. and B. below.
   A. **Additional Living Expense / Fair Rental Value.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and**

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 26 of 87 PageID #: 26

**mold.** When a covered property loss makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, either of the following. However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below.

1. **Additional Living Expense. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living. **Our** liability will not exceed the smallest of:
   a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;
   b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or
   c. the limit of liability for Loss of Use as specified in the policy Declarations for up to two years.

2. **Fair Rental Value. We** will pay the fair rental value of that part of the **residence premises** where **you** reside less any expenses that do not continue while the premises is not fit to live in. **Our** liability will not exceed the smallest of:
   a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;
   b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or
   c. the limit of liability for Loss of Use as specified in the policy Declarations for up to two years.

B. **Loss of Rental Income.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold. We** will pay **your** loss of rental income resulting from a covered property loss less charges and expenses which do not continue, while the part of the **residence premises you** rent to others, or hold for rental, is uninhabitable. Payment will be for the shortest time required to repair or replace the rented part. Payment for the shortest time required will not exceed twelve months. This period of time is not limited by the expiration of this policy. **We** do not cover the loss or expense due to cancellation of a lease or agreement.

C. **Prohibited Use. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living and the loss of fair rental value when access to the **residence premises** is denied by civil authorities because of a loss to a neighboring premises caused by a peril **we** insure against. Payment is for a period of time not to exceed forty-five days. The period of time is not limited by expiration of this policy.

2. **Debris Removal**
   A. **We** will pay reasonable expenses **you** incur to remove:
      1. debris of covered property resulting from a cause of loss **we** cover for the damaged property; or
      2. ash, dust or particulate matter from a volcanic action that has caused direct loss to a building or covered personal property in a building.
      This expense is included within **our** limit of liability that applies for the covered property. If the amount payable for the actual damage to the property plus the debris removal expense is more than **our** limit of liability for the covered property, **we** will pay up to an additional 10% of that limit for debris removal.

   B. **We** will also pay up to $500 for any one loss for the reasonable expenses **you** incur for the removal from **your residence premises** of:
      1. **your** tree(s) felled by windstorm, hail or the weight of ice, snow or sleet; or
      2. **your** neighbor's tree(s) felled by a loss caused by **SECTION I - BROAD NAMED PERILS** provided the tree:
         a. caused damage to property covered under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
         b. blocks a driveway on the **residence premises** which prevents a motor vehicle from entering or leaving the **residence premises;** or
         c. blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling.

3. **Reasonable Repairs. We** will pay the reasonable expenses **you** incur for necessary immediate and

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 27 of 87 PageID #: 27

temporary repairs to protect covered property from further loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Charges. We** will pay up to $1000 for **your** liability assumed by contract or agreement when a fire department is called to save or protect the **residence premises** from an insured peril. **We** do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Emergency Removal of Property. We** will pay for loss to covered property from any cause while being removed from a premises because of danger from a loss **we** cover. This coverage also applies to the property for up to 30 days from the date of removal. **We** will also pay for reasonable expenses **you** incur for the removal and return of the covered property. This coverage does not increase the limit of liability applying to the property being removed.

6. **Emergency Living Expense. We** will pay up to $500 for the reasonable increase in living expenses **you** incur due to a power interruption to the **residence premises**. The power interruption must take place away from the **residence premises**. The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout. Coverage does not begin until 48 hours after the power interruption begins.

7. **Refrigerated Contents. We** will pay up to $1500 for the contents of a freezer or refrigerated food storage unit on the **residence premises** for loss due to a mechanical failure or power interruption. If mechanical failure or power interruption is known to **you**, all reasonable means must be used to protect the property from further damage or this coverage is void. The policy deductible does apply to this coverage. The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout.

8. **Identity Theft and Credit Protection Plus**
   A. **Identity Theft Resolution. We** will provide, at **our** expense, a representative of **our** choice to assist **you** in resolving issues of unauthorized use of **your** identity or **your** credit information. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. The expense of this assistance will not reduce the amount paid under this coverage.

   B. **Identity Theft Expenses. We** will pay up to $25,000 for reimbursement expenses incurred by **you** as the direct result of any one identity fraud first discovered or learned of during the policy period. Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against **you**, is considered to be one identity fraud, even if that one identity fraud continues into a subsequent policy period.

      Exclusions. **We** do not cover:
      1. loss arising out of or in connection with a **business;**
      2. reimbursement expenses incurred due to any fraudulent, dishonest or criminal act by **you** or any person aiding or abetting any person defined as **you**, or by any representative authorized by **you**, whether acting alone or in collusion with others; or
      3. loss other than reimbursement expenses.

      Conditions
      1. **We** will not make a duplicate payment under this coverage for reimbursement expenses for which payment has already been made by any other source.
      2. Within 60 days after **our** request, **you** must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge, **your** claim for reimbursement expenses for loss under identity fraud and send to **us** any receipts, bills or other records that support **your** claim.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 28 of 87 PageID #: 28

Definitions

Identity fraud means the act of knowingly transferring or using, without lawful authority, a means of identification of any person defined as **you** with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

Reimbursement expenses are:

a. costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

b. costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

c. charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual identity fraud;

d. lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $250 per day. Total payment for lost income is not to exceed $5000;

e. loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;

f. lease application fees for re-applying for a lease or leases when the lender received incorrect credit information; and

g. reasonable attorney fees incurred as a result of identity fraud to:

(1) defend lawsuits brought against **you** by merchants, financial institutions or their collection agencies;

(2) remove any criminal or civil judgments wrongly entered against **you;** and

(3) challenge the accuracy or completeness of any information in a consumer credit report.

C. **Credit Card Protection. We** will pay up to $10,000 for loss:

1. that **you** are legally required to pay because of the unauthorized use of any credit card or electronic fund transfer card issued to or registered in **your** name;

2. to **you** caused by forgery or alteration of any check or negotiable instrument; and

3. to **you** through acceptance in good faith of counterfeit United States or Canadian paper currency.

Exclusions. **We** will not pay:

1. more than the limit of liability stated above. All loss due to forgery or unauthorized use by any one person or in which that person is concerned is considered one loss;

2. any loss arising out of **your** dishonesty; or

3. any loss resulting from **your** business activities.

D. **Defense**

1. **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.

2. If a suit is brought against **you** for liability under the Identity Theft and Credit Protection Plus coverage, **we** will provide a defense at **our** expense and by counsel of **our** choice.

3. **We** have the option to defend **you** or **your** bank, at **our** expense, against any suit for the enforcement of payment under the Forgery coverage.

9. **Data and Records. We** will pay up to $2500 for data and records when loss or damage is caused by **SECTION I - BROAD NAMED PERILS** or by computer virus. This includes the cost of blank books, cards or other blank material plus the cost of labor **you** incur to research, transcribe, copy, replace or restore the information from the lost or damaged material. Computer virus means an illegal or malicious entry into **your computer** which results in functions that distort, corrupt or manipulate the **computer, peripheral device** or **media.**

10. **Lock Replacement. We** will pay the reasonable expenses to replace the exterior door lock or lock cylinder of the **residence premises** with a lock of like kind and quality when a key to the lock has been stolen. **You** must report the theft to **us** and the police within 24 hours after discovery.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 29 of 87 PageID #: 29

11. **Reward Coverage. We** will pay 10% of the amount of the loss to the **residence premises** up to $5000 to anyone providing information leading to an arson conviction in connection with the loss.

**We** will pay anyone providing information leading to the recovery of personal property stolen from **you** 10% of the value of the recovered property **up to** $5000.

**We** will pay 10% of the amount of the loss up to $1000 to anyone providing information leading to the arrest and conviction of anyone who robs, steals or burglarizes **your** property.

These amounts shall not be increased regardless of the number of persons providing information. These coverages are in addition to the limit of liability applying to the damaged property.

12. **Trees, Shrubs, Plants and Lawns.** Coverage applies to direct loss caused by: fire or lightning, theft, explosion, aircraft, riot or civil commotion, vandalism or malicious mischief, vehicles not owned or operated by an occupant of the **residence premises,** or collapse of a building structure or any part of a building structure. This coverage is in addition to the limits of liability applying to Section I Property.

**We** will pay up to $500 for any one tree, shrub or plant. **We** will pay up to 5% of the Coverage A - Dwelling Amount for loss to trees, shrubs, plants and lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 5% of the Coverage C - Personal Property Amount.

If Increased Coverage on Trees, Plants and Shrubs is shown in the Declarations, **we** will pay up to $1000 for any one tree, shrub or plant. **We** will pay up to 10% of the Coverage A - Dwelling Amount for loss to trees, shrubs and plants at the **residence premises** or 5% of the Coverage A - Dwelling Amount for loss to lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 10% of the Coverage C - Personal Property Amount for loss to trees, shrubs, plants or 5% of the Coverage C  Personal Property Amount for loss to lawns at the **residence premises.**

**We** do not cover trees, shrubs, plants and lawns grown for **business purposes.**

The policy deductible does apply to this coverage.

13. **Loss Assessment. We** will pay up to $10,000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners. This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises.**

If Increased Loss Assessment is shown in the Declarations, then the $10,000 limit is increased to the amount shown.

This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a peril covered under **SECTION I - LOSSES WE COVER** for **COVERAGE A - DWELLING.** This coverage does not include loss caused by:
A. earthquake; or
B. land shock waves or tremors before, during or after a volcanic eruption.

Regardless of the number of assessments, the limit referenced above is the most **we** will pay with respect to any one loss.

This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

A $250 deductible does apply to this coverage unless **you** also have a loss covered under Section I Coverage A, B or C from the same event.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 30 of 87 PageID #: 30

This coverage is in addition to the limit of liability applying to the Coverage A, B or C property.

**We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

14. **Land.** If a structure covered under Coverage A or Coverage B sustains a covered loss, then **we** will pay up to $10,000 for the cost **you** incur to replace, rebuild, stabilize or otherwise restore the land necessary to support that portion of the structure that **you** own. This coverage is in addition to the limit of liability applying to the damaged property.
**We** will not pay for any:
   A. loss caused by chemicals in the soil or resulting from the release of toxic materials or other pollutants or contaminants; or
   B. assessment charged against **you** by a corporation or association of property owners.

15. **Volcanic Action.** **We** will pay for direct physical loss to a covered building or covered property in a building resulting from the eruption of a volcano when direct loss is caused by:
   A. volcanic blast or airborne shock waves;
   B. ash, dust or particulate matter; or
   C. lava flow.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit of liability applying to the damaged property.

The policy deductible does apply to this coverage.

16. **Collapse.** **We** will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:
   A. perils described in **SECTION I - BROAD NAMED PERILS;**
   B. hidden decay of the structure;
   C. hidden insect or hidden vermin damage;
   D. weight of contents, equipment, animals or people;
   E. weight of ice, snow, sleet or rain which collects on a roof;
   F. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation;
   G. water or water-borne material which backs up through sewers or drains; or
   H. water or water-borne material which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, septic field, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items B., C., D., E., and F. unless the loss is a direct result of the collapse of a building.

Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

This coverage does not increase the limit of liability applying to the damaged covered property.

The policy deductible does apply to this coverage.

17. **Inflation Protection.** The Blanket Property Limit specified in the Declarations of this policy, or any amendments thereto, for Coverages A, B and C is continuously adjusted in accordance with the applicable construction price or consumer price index in use by **us.**

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 31 of 87 PageID #: 31

18. **Landlord's Furnishings.  We** will pay up to $2500 for **your** appliances, carpeting and other household furnishings in each apartment on the **residence premises** regularly rented or held for rental to others by **you** for loss caused by **SECTION I - BROAD NAMED PERILS** other than Theft.  The $2500 limit is the most **we** will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.  This coverage does not increase the limit of liability applying to the damaged property.

19. **Fungus and Mold Remediation.  We** will pay up to a limit of $5000 for remediation treatment and remediation testing as necessary to complete the repair or replacement of the damaged property.  This coverage applies        when property covered under Coverages A, B or C is damaged by a covered water loss.  Furthermore, this coverage applies only if all reasonable means were used to save and preserve the property from further damage at and after the time of the covered water loss.  This limit includes:
    a.  the cost to tear out and replace any part of the covered property necessary to gain access to any organisms listed under remediation treatment; and
    b.  if the need for remediation treatment or remediation testing makes the **residence premises** uninhabitable,   the reasonable increase in living expenses and **your** loss of rental income.  Payment will be for the shortest time required to perform the remediation treatment or remediation testing.

    Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold.**

    Remediation testing includes any testing or investigation of either property or air to detect, measure, evaluate or confirm the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

    If more than one **residence premises** is insured under this policy, this is the most **we** will pay, for any one loss at any one covered location, for the total of all loss or costs payable under this Additional Coverage.  This applies regardless of the number of claims made under this policy.

    If Increased Coverage on Fungus and Mold Remediation is shown in the Declarations, then the $5000 limit is increased to the amount shown.

20. **Dwelling Under Construction Extension of Coverages.**  This coverage is contingent upon prior written notification to **us** by **you** that the dwelling described in the Declarations is under its initial construction and has not been completed and occupied.  This coverage remains in force until the dwelling is completed and occupied or the policy expires, cancels or terminates, whichever comes first.

    A.  Provisional Amount of Insurance
        The amount of insurance stated under Basic Coverages in the Declarations for Coverage A - Dwelling is provisional, and is based upon the projected value of the dwelling at the date of completion.  The actual amount of insurance on any date while the policy is in force will be a percentage (%) of the provisional amount.  The percentage (%) will be the proportion that the actual value of the property at the time of loss bears to the projected value at the date of completion.  However, this amount of insurance shall not, in any case, exceed the Coverage A - Dwelling Amount stated in the Declarations.

    B.  **We** agree to extend COVERAGE C - PERSONAL PROPERTY, COVERAGE F - PERSONAL LIABILITY and COVERAGE G - MEDICAL PAYMENTS TO OTHERS to the residence where **you** are residing while waiting for the dwelling under construction described in the Declarations to be completed and occupied.

    C.  Theft of Personal Property
        **We** cover loss of personal property by theft in or from a dwelling under construction at the location described     in the Declarations, only if the dwelling is fully enclosed and capable of being locked.  The personal property   must be owned by **you**, not supplied by the contractor.  **We** do not cover theft committed by anyone defined        as **you**.  Coverage will be in force until the dwelling is completed and occupied.

    D.  Deductible.  This coverage is subject to the applicable deductible for the covered cause of loss.

21. **Ordinance or Law**
    A. When property covered under Coverages A or B is damaged by a cause of loss **we** cover and if the enforcement is directly caused by the same loss, **we** will pay the increased costs **you** incur due to the enforcement of any ordinance or law in effect at the time of loss which requires or regulates:
       1. the construction, repair, demolition or zoning of the physically damaged part of a covered building or private structure;
       2. the demolition and reconstruction of the undamaged part of a covered building or private structure when that building or private structure must be totally demolished; or
       3. changes to or replacement of the portion of the undamaged part of a covered building or private structure necessary to complete the repair or replacement of that part of the covered building or private structure damaged by the covered cause of loss.

       Limit of Liability
       **Our** limit of liability for loss covered under Ordinance or Law Coverage is included within the Blanket Property Limit shown in the Declarations at the time of loss.

    B. Under **SECTION I - LOSSES WE DO NOT COVER**, the **Ordinance or Law** exclusion remains in effect except to the extent coverage is provided under this Additional Coverage.

    C. **You** may use all or part of this ordinance or law coverage to pay for the increased costs **you** incur to remove debris resulting from the construction, repair or demolition.

    D. **We** do not cover:
       1. any loss in value to any covered building or private structure due to the requirements of any ordinance or law; or
       2. the costs to comply with any ordinance or law which requires **you** or others to remove, clean up, test, monitor, abate, contain, neutralize or treat any property:
          a. for loss excluded under **LOSSES WE DO NOT COVER, Pollution** and **Lead Exposure;** or
          b. for **fungus and mold.**

22. **Back Up of Sewer, Drain and Sump Pump**
    A. **We** cover damaged or destroyed property under the Coverages listed in **SECTION I - COVERAGES** caused by or resulting from water or water-borne material:
       1. which backs up through sewers or drains; or
       2. which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

    B. Limit of Liability
       1. If no limit is shown in the Declarations for Back Up or Sewer, Drain and Sump Pump Coverage, then the limits applying to the damaged or destroyed property under Section I - Coverages A, B and C apply.
       2. If a limit is shown in the Declarations for Back Up of Sewer, Drain and Sump Pump Coverage, then the limit shown is the total **we** will pay in any one loss for damaged or destroyed property under Section I - Coverages A, B and C.
    C. Under **SECTION I - LOSSES WE DO NOT COVER**, 1.D. Water Damage item 2. is deleted with respect to the coverages provided by this additional coverage.

    D. Deductible. **We** will pay only that part of the loss that exceeds the deductible amount shown in the Declarations for this coverage. This deductible amount applies separately to each loss.

23. **Newly Acquired Watercraft and Equipment. We** will pay for direct physical loss to watercraft, including any accompanying equipment, motors and trailers, for which **you** acquire ownership during the policy period if:
    1. there is no other insurance provided by this or any other insurance policy for the newly acquired property;
    2. **you** ask **us** within 30 days of acquisition to insure the property; and
    3. **you** pay any additional premium required by **us** for the newly acquired property.

    Limit of Liability. The most **we** will pay for a loss to property **you** own or purchase is $25,000.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 33 of 87 PageID #: 33

# CAUSES OF PROPERTY LOSS

## SECTION I - LOSSES WE COVER
(COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**

**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**COVERAGE A - DWELLING**
**COVERAGE B - PRIVATE STRUCTURES**
**COVERAGE C - PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION I - LOSSES WE DO NOT COVER.**

## SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

1. **Fire or Lightning**
2. **Windstorm or Hail**
   **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.
   **We** do not pay for loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building. **We** do cover canoes and rowboats on the **residence premises.**
3. **Explosion**
4. **Riot or Civil Commotion**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles**
7. **Smoke,** if the loss is sudden and accidental including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.
   **We** do not pay for loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or Malicious Mischief**
   **We** do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant.
9. **Theft,** or attempted theft, including loss of property from a known place when it is likely that a theft has occurred.
   **We** do not pay for loss caused by theft:
   A. if committed by **you** or by any person regularly residing on the **residence premises;**
   B. in or from a dwelling under construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or
   C. from any part of the **residence premises** rented by **you** to others.
   **We** do not pay for loss caused by theft that occurs away from the **residence premises** of:
   A. property while in any other residence owned, rented to or occupied by **you,** except while **you** are temporarily residing there. Coverage is provided for a student's property while at a premises away

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 34 of 87 PageID #: 34

      from home if the student has been there at any time during the 45 days immediately preceding the loss;

  B.  watercraft of all types including its furnishings, equipment and outboard motors; or

  C.  trailers and campers.

10. **Falling Objects**
   **We** cover loss to personal property inside a building only if the falling object first damages the exterior walls or roof. Damage to the falling object itself is not covered.

11. **Weight of Ice, Snow or Sleet** which causes damage to a building or to property contained in a building.
   **We** do not cover loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

12. **Discharge or Overflow of Water or Steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance. The loss must be sudden and accidental. With regard to **your** property covered under Coverage A or Coverage B, **we** also will pay to tear out and replace any part of a building or other structure on the **residence premises** but only when necessary to repair the system or appliance from which the water or steam escaped. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the **residence premises**.
   **We** do not pay for loss:
   A.  to the system or appliance from which the water or steam escapes;
   B.  caused by or resulting from freezing under this peril;
   C.  caused by water which backs up through sewers or drains;
   D.  caused by water which overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from the foundation area;
   E.  caused by water which overflows from a roof drain, gutter, downspout or similar fixtures or equipment; or
   F.  on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

13. **Rupturing, Cracking, Burning or Bulging** of a steam or hot water heating system, an air-conditioning or automatic fire protective sprinkler system, or an appliance for heating water. The loss must be sudden and accidental.
   **We** do not pay for loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a domestic appliance.
   **We** do not pay for loss on the **residence premises** while the dwelling is unoccupied, unless **you** have used reasonable care to maintain heat in the building or have shut off the water supply and drained the water from all plumbing and appliances. However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply. For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment.

15. **Sudden and Accidental Damage from Electrical Currents Artificially Generated** to electrical appliances, devices, fixtures and wiring.

16. **Breakage of Glass or Safety Glazing Material**
   **We** will pay for direct physical loss to covered property caused by the breakage of glass or safety glazing material which is part of a building, window or door on the **residence premises**.
   **We** do not pay for loss if the dwelling was vacant for more than 30 consecutive days immediately prior to the loss. A dwelling being constructed is not considered vacant.

## SECTION I - LOSSES WE DO NOT COVER

1. **We** do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. **We** do not insure for any such loss regardless of:
   (a) the cause of the excluded event;
   (b) other causes of the loss; or
   (c) whether such causes acted at the same time or in any other sequence with the excluded event to produce or contribute to the loss.
   These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area. The excluded events are listed below.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 35 of 87 PageID #: 35

A. **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
1. by **you** or at **your** direction; and
2. with the intent to cause a loss.
This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

B. **Pollution,** meaning loss or damage to property which results directly or indirectly from:
1. discharge, dispersal, release or escape of pollutants or contaminants, including damage caused by chemicals in the soil and loss resulting from the release of toxic materials or other pollutants or contaminants, no matter how caused;
2. discharge, dispersal, release or escape of fuel oil and other petroleum products; or
3. smog; smoke from agricultural smudging or industrial operations.

However, **we** pay for direct loss that ensues after pollution. **We** pay for such ensuing loss only if caused by fire, smoke that is not from agricultural smudging or industrial operations, explosion, glass breakage, or water damage not specifically excluded in this policy. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

C. **Lead Exposure,** meaning loss or damage to the **residence premises** or any property owned, rented or controlled by **you** (including private structures and private approaches), which result directly or indirectly from the presence of lead. **We** do not pay for any costs or expenses incurred or loss arising out of:
1. the abatement, neutralization, cleanup, removal, repair, refurbishing or treatment of:
   a. lead;
   b. property containing lead;
   c. soil, or earth containing lead;
   d. water, pipes or plumbing containing lead;
   e. paint, putty, dust or plaster containing lead; or
   f. any other product or substance containing lead; or
2. any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
   a. lead;
   b. property containing lead;
   c. soil, or earth containing lead;
   d. water, pipes or plumbing containing lead;
   e. paint, putty, dust or plaster containing lead; or
   f. any other product or substance containing lead.

D. **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:
1. flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
2. water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
3. water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure or water which causes earth movement.
This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned,

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 36 of 87 PageID #: 36

rented, occupied or controlled by **you** is covered.

Water damage to property described in Coverage C on a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

E. **Earth Movement,** meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:

1. earthquake and earthquake aftershocks;
2. volcanic eruption and volcanic effusion;
3. sinkhole;
4. subsidence;
5. mudslide including landslide, mudflow, debris flow, avalanche or sediment;
6. erosion or excavation collapse;
7. the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and
8. volcanic explosion and lava flow, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Volcanic Action.**

This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal    forces or any act of nature.

However, **we** pay for direct loss that ensues after earth movement if caused by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing material and then **we** pay for only the ensuing loss.

F. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy.

G. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises,** except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Emergency Living Expense.** If a loss **we** pay for ensues on the **residence premises, we** pay for only the ensuing loss.

H. **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against.

I. **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke.

However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

J. **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except:

1. conditions **we** insure under **Prohibited Use of SECTION I - ADDITIONAL COVERAGES** for **Loss of Use;** or
2. acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this policy.

2. **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 37 of 87 PageID #: 37

A. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;

B. defective, inadequate, faulty or unsound:
   1. planning, zoning, development, surveying, siting;
   2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   3. materials used in repair, construction, renovation or remodeling; or
   4. maintenance;

   of any property whether on or off the **residence premises.** Property includes land, structures or improvements of any kind; and

C. weather conditions.

   However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3. **We** do not cover loss or damage to the property described in <u>Coverage A, Coverage B</u> and <u>Coverage C</u> which results directly or indirectly from any of the following:

   A. wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

   B. **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for Fungus and Mold Remediation;

   C. settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

   D. animals owned or kept by **you** or any person regularly residing on the premises;

   E. birds, vermin, rodents or insects;

   F. theft in or from the **residence premises** while under construction, or of materials and supplies for use in the construction, until the **residence premises** is completed and occupied;

   G. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a domestic appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if **you** have used reasonable care to maintain heat in the building or if **you** shut off the water supply and drained the plumbing and appliance of water. However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment;

   H. freezing, thawing or pressure or weight of water, snow or ice, whether driven by wind or not, to a swimming pool including filtration, heating and circulation systems, fence, driveway, roadway, walkway, pavement, patio, foundation, footing, retaining wall, bulkhead, pier, wharf or dock; or

   I. pressure from or presence of tree, shrub or plant roots.

   **We** do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 38 of 87 PageID #: 38

4.  **We** do not pay for loss or damage to the property described in <u>Coverage A</u> and <u>Coverage B</u>:

   A.  caused by vandalism or malicious mischief or breakage of glass and safety glazing materials, and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant;

   B.  caused by seepage, meaning continuous or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, from within:
1.  a heating system;
2.  an air conditioning system;
3.  an automatic fire protective sprinkler system;
4.  a domestic appliance; or
5.  a plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

However, **we** pay for ensuing damages to building property that results from such seepage if the leakage of water is not able to be observed and is hidden within the walls or ceilings or above the ceilings or beneath the floors but not below the slab or foundation floor of a structure.

For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment.

**We** pay for any direct loss that follows after seepage to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped; or

   C.  involving collapse, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Collapse.** However, **we** do pay for any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy.

5.  **We** do not pay for loss or damage to the property described in <u>Coverage C caused by</u>:

   A.  breakage of:
1.  eyeglasses, glassware, statuary, marble; or
2.  bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

There is coverage for breakage of the property resulting from:
1.  fire, lightning, windstorm or hail;
2.  smoke, other than smoke from agricultural smudging or industrial operations;
3.  explosion, riot, civil commotion;
4.  aircraft, vehicles or vandalism and malicious mischief;
5.  collapse of a building or any part of a building;
6.  water not otherwise excluded;
7.  theft or attempted theft; or
8.  sudden and accidental tearing apart, cracking, burning, or bulging of:
    a.  a steam or hot water heating system;
    b.  an air conditioning or automatic fire protective sprinkler system; or
    c.  an appliance for heating water;

   B.  dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 39 of 87 PageID #: 39

C. refinishing, renovating or repairing property other than watches, jewelry and furs;

D. collision other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard motors or engines;

E. destruction, confiscation or seizure by order of any government or public authority;

F. acts or decisions, including the failure to act or decide, of any person, group, organization or government body. However, any ensuing loss to property described in Coverage C not excluded or excepted in this policy is covered; or

G. an error in computer programming or instructions to the **computer.**

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 40 of 87 PageID #: 40

# PROPERTY LOSS SETTLEMENT

## SECTION I - HOW WE SETTLE A PROPERTY LOSS
### (Blanket Property)

Covered loss to property described under **Coverage A - Dwelling, Coverage B - Private Structures,** and **Coverage C - Personal Property** is settled as follows.

**Our** total limit of liability for loss settled under 1. and 2. below is the Blanket Property Limit shown in the Declarations. This limit applies regardless of the number of losses from the same **occurrence** or the combination of covered losses under Coverages A, B or C.

1. **Actual Cash Value Settlement.** Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property. **We** will pay no more than the amount required to repair or replace the damaged property with property of like kind and quality.

   A. Actual Cash Value Settlement applies until actual repair or replacement is complete.

   B. Actual Cash Value Settlement applies to the following types of personal property:
      1. antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced with new articles;
      2. articles for which the age, history, scarcity or condition contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs, and collectors' items such as trading cards, comic books, and autographed merchandise;
      3. property which is obsolete or unusable because of its age or condition prior to the loss, or not being used for the purpose for which it was originally intended;
      4. articles separately described and specifically insured in any other policy;
      5. watercraft, including their trailers, furnishings, equipment and outboard motors; and
      6. motorized land vehicles principally designed for recreational use.

   C. The provisions of paragraphs 1.D., 2 and 3. below do not apply to the above types of property described in 1.B.

   D. If **you** repair or replace the damaged or destroyed property, **you** may make further claim for any additional payments for **Replacement Cost Settlement** provided:
      1. **you** have not reached the applicable limit of liability;
      2. **you** still have an insurable interest in the property;
      3. **you** notify **us** within 180 days after the date of **actual cash value** payment of **your** decision to repair or replace the damaged or destroyed dwelling or private structure;
      4. **you** notify **us** within 30 days after the repair or replacement has been completed; and
      5. the date of completion is within one year from the date of **actual cash value** payment.
      The foregoing time limitations shall apply unless **you** or **your** representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation.

2. **Replacement Cost Settlement. We** will not be liable unless and until actual repair or replacement is complete.

   A. For covered loss to real property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation. **Our** limit of liability shall not exceed the smallest of the following:
      1. the cost to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use; or
      2. the amount actually and necessarily spent to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use.
      If **you** rebuild **your** building or purchase an existing building at an address other than shown in the Declarations, the replacement will not increase the amount payable under Replacement Cost Settlement.

      The amount payable does not include the value of any land associated with the replacement building(s).

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 41 of 87 PageID #: 41

   B. For covered loss to personal property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation. **Our** limit of liability shall not exceed the smallest of the following:

     1. the cost to replace the property with a similar property of like kind and quality;

     2. the full cost of repair to restore the property to its original condition;

     3. the limit of liability for applicable types of property under the **Special Limitations on Certain Property** under **SECTION I - COVERAGES, COVERAGE C - PERSONAL PROPERTY;** or

     4. the limit of liability that applies to any item separately described and specifically insured under this policy.

3. **Coverage A Plus.** For the dwelling under Coverage A, **we** will pay the **Actual Cash Value Settlement** or **Replacement Cost Settlement** as provided in 1. and 2. above even if that cost exceeds the remaining amount of insurance available under the Blanket Property Limit shown in the Declarations after loss to property covered under **Coverage B - Private Structures** and **Coverage C - Personal Property** has been settled.

   The following requirements apply:

   A. **you** obtained Coverage A Plus by insuring **your** dwelling to 100% of its replacement cost based on the accuracy of information **you** furnished in the completion of **our** home replacement cost estimator or upon an inspection by **us** of the **residence premises;**

   B. **you** have kept **your** insurance continuously without lapse and have accepted the Inflation Protection provision in this policy including each annual adjustment in the replacement value automatically applied to **your** policy at each renewal; and

   C. **you** must have notified **us** within 90 days after the start of any additions or other physical changes which increase the replacement value of **your** dwelling by $25,000 or more.

4. **We** will pay no more than the $10,000 limit of liability on **Land** as provided in **SECTION I - ADDITIONAL COVERAGES.**

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 42 of 87 PageID #: 42

# PROPERTY CONDITIONS

### SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability. We** will not pay any person or organization an amount greater than its insurable interest in the property covered at the time of the loss.
   Regardless of the number of persons or organizations who qualify for coverage, **we** will not pay more than the applicable limit of liability.

2. **What You Must Do After a Loss. We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.
   A. Immediately notify **us** or **our** representative.
   In case of theft, promptly notify the police.
   **In** case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

   B. Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

   C. Cooperate with **us** in the investigation of a claim.

   D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item. Attach to the inventory all bills and other documents that substantiate the figures in the inventory.

   E. At any reasonable time and place **we** designate, and as often as **we** reasonably require:
      1. show **us** the damaged property;
      2. submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers: and
      3. allow **us** to examine and copy or abstract any records and documents **we** request.

   F. Within 60 days after **our** request, **you** must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:
      1. the time and cause of loss;
      2. **your** interest and that of any other person in the property involved and all encumbrances on the property;
      3. a description of each item, including all information contained in the inventory described above;
      4. a description of other insurance policies that might apply to the loss;
      5. any changes in ownership, use, possession or location of the property that took place since this policy was issued;
      6. if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;
      7. specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
      8. receipts for additional living expenses **you** incur and records supporting the fair rental value; and
      9. evidence or affidavit supporting a claim under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money,** stating the amount and cause of loss.

3. **Our Settlement Options. We** will adjust all losses with **you. We** will pay **you** unless another payee is named in the policy. **We** will pay within 60 days after the amount of loss is agreed upon. This amount may be determined by an agreement between **you** and **us,** an appraisal award or entry of a final judgment, subject to **SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

   **We** have the option of taking all or part of the property at the agreed or appraised value. **We** have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** signed, sworn proof of loss.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 43 of 87 PageID #: 43

4. **Loss.** Any loss **we** pay under this policy does not reduce the limit of liability.

5. **Loss to a Pair or Set.** In case of loss to a pair or set **we** may elect to:
   A. repair or replace any part to restore the pair or set to its value before the loss; or
   B. pay the difference between **actual cash value** of the property before and after the loss.

6. **Abandoned Property.** **We** are not obligated to accept any property or responsibility for any property abandoned by **you.**

7. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

   The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

   **You** will pay the appraiser selected by **you.** **We** will pay the appraiser selected by **us.** **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

8. **Rights and Duties of Mortgagee.** If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest under all present and future mortgages. If more than one mortgagee is named, payment will be made in the order of priority of the mortgagees.

   The interest of the mortgagee under this policy will not be affected by any action or neglect by **you.** The interest of the mortgagee under this policy will terminate unless it:
   A. pays upon demand any premium due if the owner or mortgagor fails to do so;
   B. notifies **us** of any change of ownership or increase in hazard of which the mortgagee has knowledge; and
   C. pays upon demand the premium for any such increase in hazard.

   **We** will notify the mortgagee if **you** fail to give **us** proof of loss. Within 60 days after receiving such notice, the mortgagee must give **us** proof of loss. Policy conditions relating to appraisal, time of payment and time of bringing lawsuit apply to the mortgagee.

   **We** will give the mortgagee not less than 10 days notice of cancellation or nonrenewal of the insurance protecting its interest.

   If **we** pay the mortgagee for any loss and deny payment to **you,** **we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property. At **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

   **Our** cancellation of the policy also applies to agreements under this condition.

   As used in this condition, the term "mortgagee" includes a trustee, if applicable.

   If the Coverage A insurance is provided for a mobile home, the term "mortgagee" includes a lienholder.

9. **No Benefit to Bailee.** **We** will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 44 of 87 PageID #: 44

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

## SECTION II - LOSSES WE COVER

### COVERAGE F - PERSONAL LIABILITY

**Agreement. We** will pay all sums for **bodily injury, property damage** and **personal injury** to others for which the law holds **you** responsible because of an **occurrence** to which this coverage applies. This includes prejudgment interest awarded against **you.**

**We** will defend **you,** at **our** expense with counsel of **our** choice, against any suit seeking these damages. **We** may investigate, negotiate, or settle any suit. **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.

**We** are not obligated to pay any judgment or defend any suit if **we** have already exhausted the limit of liability set forth in the Declarations by paying judgments or settlements.

**Limit of Liability.** The limit of liability shown in the Declarations for "each **occurrence"** is the maximum **we** will pay for all damages as a result of any one **occurrence. Our** total limit for all damages resulting from a **personal injury** offense, including a series of related offenses, will not be more than the limit of liability shown in the Declarations for Coverage F - Personal Liability.

### COVERAGE G - MEDICAL PAYMENTS TO OTHERS

**Agreement. We** will pay the reasonable **medical expenses** that are incurred or medically ascertained within three years from the date of the accident causing **bodily injury.** This coverage does not apply to **you.** This coverage does apply to others who sustain **bodily injury** as a result of an accident, while they are:
1. on the **insured premises** with **your** permission; or
2. off the **insured premises,** if the **bodily injury:**
   A. arises out of a condition on the **insured premises** or immediately adjoining ways;
   B. is caused by **your** activities;
   C. is caused by an animal owned by **you** or in **your** care;
   D. is caused by a **residence employee** arising out of and in the course of employment by **you;** or
   E. is sustained by any **residence employee** arising out of and in the course of employment by **you.**

**Limit of Liability.** The limit of liability shown in the Declarations for "each person" is the maximum **we** will pay to any one person as a result of any one accident.

**Our Payment of Loss. We** may pay the injured person or the provider of the medical services. Such payment is not an admission of liability by **you** or **us.**

## SECTION II - LOSSES WE DO NOT COVER

### COVERAGE F - PERSONAL LIABILITY AND COVERAGE G - MEDICAL PAYMENTS TO OTHERS

1. **Intentional Loss. We** do not cover **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts or omissions. This exclusion is applicable even if:
   A. **you** lack the mental capacity to govern **your** conduct;
   B. such **bodily injury** or **property damage** is of a different kind or degree than reasonably expected or intended by **you;** or
   C. such **bodily injury** or **property damage** is sustained by a different person than expected or intended by **you.**
   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
   However, this exclusion does not apply to **bodily injury** or **property damage** resulting from the use of

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 45 of 87 PageID #: 45

reasonable force by **you** to protect persons or property.

2. **Pollution. We** do not cover **bodily injury, property damage** or **personal injury:**
   A. resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants;
   B. resulting from the discharge, dispersal, release or escape of fuel oil and other petroleum products;
   C. resulting from electrical or magnetic emissions, whether visible or invisible, and sound emissions;
   D. liability, whether or not statutorily imposed, resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions; or
   E. resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions.

3. **Lead Exposure**
   A. **We** do not cover damages arising out of **bodily injury** or **personal injury** caused by or resulting from ingestion, poisoning or exposure to lead.

   B. **We** do not cover damages arising out of **property damage** or **personal injury** resulting from:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;
      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   C. **We** do not cover damages arising out of **property damage** or **personal injury** and any costs or expenses or loss incurred as a result of any governmental directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;
      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   D. **We** do not cover damages arising out of **bodily injury, property damage** or **personal injury** resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead.

4. **Business. We** do not cover **bodily injury** or **property damage** arising out of or in connection with **your business** activities. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business.**

   With respect to **COVERAGE F - PERSONAL LIABILITY,** this exclusion does not apply to **your** occasional or part-time **business** activities if **you** are under 19 years of age or a full-time student under 21 years of age.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 46 of 87 PageID #: 46

If the **residence premises** is shown in the Declarations as a 2, 3 or 4 family dwelling, this exclusion does not apply to the portions that are rented by **you** to others or held for rental by **you** to others for use only as a residence.

5. **Care of Persons. We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

6. **Professional Services. We** do not cover **bodily injury** or property damage arising out of the rendering of or failing to render professional services of any kind.

7. **Other Premises. We** do not cover **bodily injury** or **property damage** arising out of the use of any premises owned, rented or controlled by **you.** Coverage does apply to:
   A. the **insured premises;** and
   B. **bodily injury** to a **residence employee.**

8. **Motorized Land Vehicles. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of a motorized land vehicle or trailer owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a motorized land vehicle or trailer to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a motorized land vehicle or trailer; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a motorized land vehicle or trailer.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. a motorized land vehicle or trailer in dead storage on the **insured premises;**
   b. a motorized land vehicle used exclusively on the **insured premises;**
   c. a trailer while not being towed or carried by a motor vehicle;
   d. a motorized land vehicle, owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**
   e. a motorized land vehicle, not owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration;
   f. a motorized land vehicle principally designed to service residential property;
   g. a motorized wheel chair; or
   h. a motorized golf cart:
      1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or
      2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the insured premises, including its public roads upon which a motorized golf cart can legally travel.

   Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you.**

9. **Watercraft. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of watercraft of any type owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a watercraft of any type to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a watercraft of any type; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a watercraft of any type.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. any watercraft on the **insured premises;**

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 47 of 87 PageID #: 47

   b. any watercraft while stored;

   c. watercraft, owned or furnished or available for **your** regular use:
     1) that is powered by one or more motors with 50 total horsepower or less. This includes watercraft propelled by a water jet pump engine or motor; or
     2) that is a sailing vessel 31 feet and under in length with or without auxiliary power;

   d. rented watercraft:
     1) powered by one or more outboard motors;
     2) that is 31 feet and under in length with an inboard or inboard-outdrive motor. This includes watercraft propelled by a water jet pump engine or motor; or
     3) that is a sailing vessel 31 feet and under in length with or without auxiliary power; or

   e. watercraft not owned by **you**, not rented to **you** nor furnished or available for **your** regular use.

This coverage is excess coverage over and above any other collectible insurance.

However, this Watercraft exclusion is deleted with respect to any watercraft, including any accompanying equipment and motors, for which **you** acquire ownership if **you** ask **us** to insure the property within 30 days of acquisition and pay any additional premiums.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**.

10. **Hovercraft. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, or loading or unloading of a hovercraft owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a hovercraft to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a hovercraft; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a hovercraft.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**, except while engaged in the operation or maintenance of hovercraft.

Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

11. **Aircraft. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, or loading or unloading of an aircraft owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of an aircraft to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving an aircraft; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving an aircraft.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**, except while engaged in the operation or maintenance of aircraft.

12. **War. We** do not cover **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed to be a warlike act even if accidental.

13. **Injury of an Insured. We** do not cover **bodily injury** to any insured within the meaning of Part 1 of the definition of **you**. This exclusion applies regardless of whether claim is made or suit is brought against **you** by the injured person or by a third party seeking contribution or indemnity.

14. **Controlled Substance. We** do not cover **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance, as defined by the Federal Food and Drug Law, Act 21 U.S.C.A. Sections 811 and 812, including any amendments. Controlled

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 48 of 87 PageID #: 48

Substance includes, but is not limited to, cocaine, LSD, marijuana, and all narcotic or hallucinogenic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

15. **Fungus and Mold**
    A. **We** do not cover **bodily injury, property damage** or **personal injury** directly or indirectly caused by or resulting from inhalation, ingestion, existence or exposure to **fungus and mold**. However, **we** do cover **bodily injury** to the extent that **fungus and mold** are on or are contained in a good or product intended for consumption.
    B. **We** do not cover damages arising out of **property damage** or **personal injury** and any costs or expenses or loss incurred as a result of any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat **fungus and mold**.
    C. **We** do not cover **bodily injury, property damage** or **personal injury** caused by or resulting from **your** failure to disclose the existence, whether known or unknown, on an **insured premises** of **fungus and mold**.
    This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

16. **Failure to Disclose. We** do not cover **bodily injury, property damage** or **personal injury** caused by or resulting from **your** failure to disclose any condition of property, whether known or unknown, sold to a buyer of the residence premises.

17. **Communicable Disease. We** do not cover **bodily injury** caused by or resulting from any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism. Furthermore, **we** do not cover **bodily injury** resulting from the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person.

18. **Abuse. We** do not cover **bodily injury** or **personal injury** caused by or resulting from the actual, alleged or threatened sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse of a person. This exclusion applies whether the **bodily injury** is inflicted by **you** or directed by **you** for another person to inflict sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse upon a person.

19. **Emotional and Mental Anguish. We** do not cover **bodily injury** or **personal injury** caused by or resulting from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury. However, this exclusion does not apply if the person seeking damages from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury has first experienced direct physical harm.

## COVERAGE F - PERSONAL LIABILITY

1. **Loss Assessment. We** do not cover liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners, except as specifically provided in **SECTION II - ADDITIONAL COVERAGES for Loss Assessment.**
2. **Contract. We** do not cover liability assumed by **you** under any unwritten contract or agreement, or by any contract or agreement in connection with **your business.**
3. **Owned Property. We** do not cover **property damage** to property owned by **you.** This includes costs or expenses incurred by **you** or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured premises.**
4. **Care, Custody or Control. We** do not cover **property damage** to property occupied or used by **you,** rented to **you,** in **your** care or over which **you** have physical control. However, coverage is extended for:
    A. **property damage** caused by fire, explosion or smoke; or
    B. **property damage** arising out of the ownership, maintenance or use of a waterbed at the **residence premises.** A waterbed is a bed with a liner and a liquid filled sealed mattress. However, **we** do not cover:
        1. property owned by **you;** or
        2. **property damage** caused by sagging or collapse of the floor if it is determined that the building construction does not conform to government building codes.
5. **Nuclear. We** do not cover **bodily injury** or **property damage** for which **you** are insured under any

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 49 of 87 PageID #: 49

nuclear energy liability policy or would be insured but for the exhaustion of its limit of liability.

6. **Workers' Compensation Law. We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by **you** under any workers' compensation, non-occupational disability or occupational disease law.

7. **Punitive. We** do not cover **bodily injury, property damage** or **personal injury** awards designated as punitive, exemplary, or statutory multiple damages.

8. **Computer Systems and Data. We** do not cover **property damage** resulting from any error, virus or malicious entry in **computer** programming, instructions or code introduced or transmitted by **you** into any data, **computer, peripheral device, media** or **purchased software.**

9. **Personal Injury, We** do not cover:

   A. liability assumed by **you** under any contract or agreement except any indemnity obligation assumed by **you** under a written agreement directly relating to the ownership, maintenance or use of the **insured premises;**

   B. injury caused by a violation of a criminal act committed by **you** or with **your** knowledge or consent;

   C. injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by **you;**

   D. injury arising out of **your business** activities. However, **we** cover **personal injury** arising out of the rental or holding for rental by **you** of any part of a premises for use only as a residence that is an **insured premises** under:

      1. this policy; or
      2. another policy for personal liability issued by Metropolitan Property and Casualty Insurance Company or any of its affiliates;

      unless a portion is rented to more than two roomers or boarders;

   E. civic or public activities performed for pay by **you;**

   F. injury caused by **you** or at **your** direction with the knowledge that the act would violate the rights of another and would inflict **personal injury;**

   G. injury arising out of oral, written or representational publication of material, if done by **you** or at **your** direction with knowledge of its falsity;

   H. injury arising out of oral, written or representational publication of material whose first publication took place before the beginning of the policy period; or

   I. **personal injury** to any insured within the meaning of Part 1 of the definition of **you.** This exclusion applies regardless of whether claim is made or suit is brought against **you** by the injured person or by a third party seeking contribution or indemnity.

## COVERAGE G - MEDICAL PAYMENTS TO OTHERS

1. **Residence Employee. We** do not cover **bodily injury** to a resident employee if the **bodily injury** occurs off the **insured premises** and does not arise out of in the course of the **residence employee's** employment by **you.**

2. **Nuclear. We** do not cover **bodily injury** from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

3. **Residents. We** do not cover **bodily injury** to any regular resident of the **insured premises,** except **your residence employee.**

4. **Workers' Compensation Law. We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law.

## SECTION II - ADDITIONAL COVERAGES

**We** cover the following in addition to the limits of liability for **COVERAGE F - PERSONAL LIABILITY** or **COVERAGE G - MEDICAL PAYMENTS TO OTHERS.**

1. **Damage to Property of Others. We** will pay up to $1500 each time **you** cause **property damage** to someone else's property during the term of the policy. At **our** option, **we** will pay the cost to either repair or replace the damaged property.

   **We** do not cover **property damage:**

   A. to property covered in Section I of this policy;

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 50 of 87 PageID #: 50

B. caused intentionally by **you** if **you** are 13 years of age or older;

C. to property owned by or rented to **you,** any of **your** tenants or any resident of **your** household; or

D. arising out of:

   1. any act or omission in connection with premises **you** own, rent or control, other than the **insured premises;**

   2. **business** activities; or

   3. the ownership, maintenance, occupancy, operation, use, loading or unloading of any motorized land vehicle, aircraft, hovercraft or watercraft of any type.

   However, **we** cover **property damage** to property of others arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading of:

   a. a motorized land vehicle or trailer in dead storage on the **insured premises;**

   b. a motorized land vehicle used exclusively on the **insured premises;**

   c. a trailer while not being towed or carried by a motor vehicle;

   d. a motorized land vehicle, owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**

   e. a motorized land vehicle, not owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration;

   f. a motorized land vehicle principally designed to service residential property;

   g. a motorized wheel chair; or

   h. a motorized golf cart:

      1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or

      2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the **insured premises,** including its public roads upon which a motorized golf cart can legally travel.

2. **Claim Expenses. We** will pay:

   A. all costs **we** incur and costs taxed against **you** in any suit **we** defend;

   B. premiums on bonds required in any suit **we** defend, but not for bond amounts greater than the limit of liability for **COVERAGE F - PERSONAL LIABILITY. We** are not obligated to apply for or furnish any bonds;

   C. reasonable expenses **you** incur at **our** request;

   D. up to $250 per day for lost wages or salary, but not other income, because **you** attended a hearing or trial at **our** request; and

   E. interest on the entire judgment awarded in any suit **we** defend which accrues after judgment is entered and before **we** pay, tender or deposit in court the amount for which **we** are liable under this policy.

3. **First Aid Expenses. We** will pay expenses for first aid to others **you** incur at the time of the accident for **bodily injury** to which this insurance applies. **We** will not pay for first aid to **you.**

4. **Loss Assessment. We** will pay up to $10,000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners. This coverage applies only to loss assessments charged against **you** as owner or tenant of the **insured premises.**

   If a limit of liability is shown in the Declarations for Increased Loss Assessment, the $10,000 limit is increased to amount shown.

   This only applies when the assessment is made as a result of:

   A. each **occurrence** to which Section II of this policy would apply; or

   B. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      1. the director, officer or trustee is elected by the members of a corporation or association of property owners; and

      2. the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   Regardless of the number of assessments, the limit referenced above is the most **we** will pay for loss arising out of:

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 51 of 87 PageID #: 51

    A. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    B. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply **if your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**We** will pay only when the assessment exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible contained in Section I of this policy.

**We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

5. **Rented or Borrowed Watercraft. We** will pay up to $25,000 for **property damage** to watercraft, including any accompanying equipment, motors and trailers, which **you** rent or borrow if there is no other insurance or coverage provided by this or any other insurance policy or written contract for the rented or borrowed property.

## SECTION II - CONDITIONS

1. **Your Duties in the Event of an Accidental Loss.** In the event of an **occurrence** or offense, **we** have no obligation to provide coverage under this policy if **you** fail to comply with the following duties.
   A. Promptly notify **us** or **our** representative, in writing, stating:
      1. **your** name and policy number;
      2. the date, place and circumstances of the accident;
      3. the name and address of anyone who might have a claim against **you**; and
      4. the names and addresses of any witnesses.
   B. Immediately send **us** any legal papers relating to the accident.
   C. At **our** request, **you** must:
      1. cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2. help **us** enforce any right of recovery against any person or organization who may be liable to **you**;
      3. attend any hearing or trial; and
      4. help **us** in collecting and giving evidence and obtaining the attendance of witnesses.
   D. Under damage to Property of Others in Section II – Additional Coverages, give **us** a sworn statement of the loss within 60 days after the loss. Also, be prepared to show **us** any damaged property under **your** control.
   E. **You** must not voluntarily pay any money, assume any obligations, or incur any expenses, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What an Injured Person Must Do Under Coverage G - Medical Payments to Others.** The injured person, or someone acting for that person, must do the following.
   A. Promptly give **us** written proof of the claim. If **we** request, this must be done under oath.
   B. Give **us** written authorization to obtain copies of all medical records and reports.
   C. Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

Case 3:15-cv-00556  Document 1  Filed 05/15/15  Page 52 of 87 PageID #: 52

## OPTIONAL COVERAGES

The following coverages are afforded only if indicated in the Declarations. They are subject to all other provisions of this policy, except as modified herein.

### EARTHQUAKE AND VOLCANIC ERUPTION

1. **We** will pay for direct physical loss to the property described in Coverages A, B and C caused by Earthquake or Volcanic Eruption.

   One or more earthquake shocks that occur within a seventy-two hour period shall constitute a single earthquake. One or more volcanic eruptions that occur within a seventy-two hour period shall constitute a single volcanic eruption.

   **We** do not pay for loss resulting directly or indirectly by flood or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

   This coverage does not increase the limits of liability stated in this policy.

2. Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by earthquake or volcanic eruption.

3. Under **SECTION I - LOSSES WE DO NOT COVER**, item 1.E. **Earth Movement**, is amended to delete earthquake, earthquake aftershocks, volcanic eruption and volcanic effusion. All other provisions of this exclusion remain in effect.

4. **Deductible. We** will pay only that part of the loss caused by earthquake or volcanic eruption over the deductible shown in the Declarations for Earthquake and Volcanic Eruption. The deductible amount shall apply to loss separately for each coverage that applies to the damaged property under **COVERAGE A - DWELLING, COVERAGE B - PRIVATE STRUCTURES** and **COVERAGE C - PERSONAL PROPERTY.**

   If the deductible shown in the Declarations for Earthquake and Volcanic Eruption is a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the Coverage A, B or C Amounts separately for each coverage that applies to the damaged property.

5. **Masonry Veneer Damage Exclusion.** The following exclusion applies only when indicated in the Declarations: **We** do not cover loss to exterior masonry veneer of the property described in Coverages A and B resulting from or caused by earthquake or volcanic eruption. The deductible shown in the Declarations for Earthquake and Volcanic Eruption applies to loss not including damage to exterior masonry veneer. The use of the term "masonry veneer" above does not include stucco.

### PRIVATE STRUCTURES RENTED TO OTHERS

Coverage is afforded only if indicated in the Declarations.

**COVERAGE B - PRIVATE STRUCTURES** is provided for the private structures rented to others described in the Declarations. **Our** limit of liability under Private Structures Rented to Others is the amount shown in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of the private structure rented to others described in the Declarations.

### BUSINESS PURSUITS

Coverage is afforded only if indicated in the Declarations.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 53 of 87 PageID #: 53

The insurance provided in Section II is extended to cover **bodily injury** and **property damage** arising out of the specified **business** activities of the person(s) designated in the Declarations.

## Losses We Do Not Cover

1. **We** do not cover **bodily injury** and **property damage** arising out of **business** activities when the **business** is owned or financially controlled by **you** or by a partnership or joint venture of which **you** are a partner or member.
2. **We** do not cover **bodily injury** and **property damage** arising out of the rendering or failure to render a professional service, other than teaching or school administration.
3. **We** do not cover **bodily injury** to **your** fellow employee arising in the course of employment.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.
5. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** and **property damage** arising out of: (a) the ownership, maintenance, occupancy, operation, use, loading, unloading of; (b) entrustment by **you** to any person of; or (c) the failure to supervise or negligent supervision of any person involving:
   A. draft or saddle animals, including vehicles used with them;
   B. aircraft;
   C. hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes but is not limited to, flarecraft and air cushion vehicles;
   D. motorized land vehicles or trailers; or
   E. watercraft of any type;
   that are owned, hired or operated by or for **you**or **your** employer or used by **you** for the purpose of instruction
6. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** to any pupil arising out of corporal punishment administered by **you** or at **your** direction.

## WATERCRAFT LIABILITY

Coverage is afforded only if indicated in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of a watercraft described in the Declarations.

## Losses We Do Not Cover

1. **We** do not cover **bodily injury** to any of **your** employees arising out of and in the course of employment. This exclusion applies only if the employee's principal duties are in connection with the maintenance or operation of such watercraft.
2. **We** do not cover such watercraft while it is used to carry persons or cargo for a charge or it is rented to others.
3. **We** do not cover **bodily injury** or **property damage** resulting from an **occurrence** in which a watercraft is being operated in, or practicing for, any prearranged or organized race, speed contest or other competition. However, coverage is extended when **your** watercraft described in the Declarations is: (a) a sailing vessel; (b) in a predicted-log cruise; or (c) in a timed fishing contest or tournament.

## INCIDENTAL BUSINESS OCCUPANCY BY YOU

Coverage is afforded only if indicated in the Declarations.

The coverage provided by this option applies only to the incidental **business** occupancy described in the Declarations.

If the **business** occupancy described in the Declarations is located in a private structure on the **residence premises, COVERAGE B - PRIVATE STRUCTURES** applies to such structure.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 54 of 87 PageID #: 54

The **COVERAGE C - PERSONAL PROPERTY** Amount applies to equipment, supplies and furnishings usual or incidental to the **business** described in the Declarations while located in the structure described in the Declarations.

This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it. This also does not include merchandise held as samples or for sale or delivery after a sale.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to afford coverage for **bodily injury** and **property damage** arising out of **your business** activities which are usual or incidental to the use of the **residence premises.**

### Losses We Do Not Cover
1. **We** do not cover **bodily injury** to any employee other than a **residence employee.**
2. **We** do not cover **bodily injury** to any student arising out of corporal punishment administered by **you** or at **your** direction.
3. **We** do not cover liability arising out of any acts, omissions or errors of **you** or any other person for whose acts **you** are liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specification, supervisory inspections or engineering services in the conduct of **your** incidental **business** involving data processing, **computer** consulting or **computer** programming.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 55 of 87 PageID #: 55

# GENERAL CONDITIONS

1. **Policy Period.** This policy applies only to accidental loss in Section I or **bodily injury** and **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as **you.**

3. **Conformity to Statute.** The terms of this policy which are in conflict with the statutes of the state in which the **insured premises** is located are hereby amended to conform to such statutes.

4. **Death.** If any person named in the Declarations dies, **we** insure:
   A. the spouse, if a resident of the household at the time of death;
   B. the legal representative of the deceased, but only with respect to the premises and property of the deceased covered by this policy at the time of death;
   C. any member of the deceased's household who was covered at the time of death, but only while a resident of the **insured premises; and**
   D. with respect to the property of the deceased, the person having proper temporary custody thereof, but only until appointment and qualification of a legal representative.

5. **Policy Changes**
   A. This policy contains all of the agreements between **you** and **us.** The terms of this policy may not be changed or waived except by endorsement issued by **us. Our** request for an appraisal or examination under oath will not waive any of **our** rights.

   B. **We** will automatically give **you** the benefit of any extension or broadening of this edition of the policy if:
      1. the change does not require additional premiums; and
      2. the change is not implemented with a general revision that includes both the broadening and restriction of coverage.

6. **Assignment. You** may not assign this policy to another person without **our** written consent.

7. **Bankruptcy or Insolvency. Your** bankruptcy or insolvency will not relieve **us** of any obligation under this policy.

8. **Our Recovery Right. You** may waive in writing before a loss all rights of recovery against any person. If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by **us.**

   If an assignment is sought, **you** must sign and deliver all related papers and cooperate with **us.**

   This does not apply under Section II to **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** or under **SECTION II - ADDITIONAL COVERAGES** to Damage to Property of Others.

9. **Lawsuits Against Us.** No suit or action may be brought against **us** by **you** unless there has been full compliance with all of the policy terms.

   Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.

   Under Section II of this policy, no one may sue **us** until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of **you,** the injured person and **us.**

   No one shall have any right to make **us** a party to a suit to determine **your** liability.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 56 of 87 PageID #: 56

10. **Other Insurance and Service Agreement.** If other insurance is available to **you** for a loss covered under Section I of this policy, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, this insurance is excess over any other insurance that covers loss by theft or loss of personal property on an unspecified peril basis.

If a loss covered under Section I of this policy is also covered by a service agreement available to **you,** this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

If other insurance is available to **you** for a loss covered under **COVERAGE F - PERSONAL LIABILITY** of this policy, this insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

11. **Premium.** All premiums for this policy will be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums in effect at the beginning of **your** current policy period. Each year, the premium for renewal of this policy will be computed on the basis of **our** manuals then in use for the effective date of the renewal of the policy.

The premiums **we** charge are based on the information provided by **you** on **your** application and other information **we** possess. **You** agree to help **us** obtain correct and complete information. **We** are permitted to adjust **your** premiums when this information changes.

Any premium adjustments made for any reason will be rounded to the nearest dollar, in accordance with the manuals in use by **us.** Any change which results in premium adjustment of less than $2.00 will be carried forward to the next billing as long as the policy remains active.

Premiums are payable on the dates set forth by **us.**

12. **Cancellation**
**You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage. If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method.

**We** may cancel this policy by delivering to **you** or by mailing to **you,** at **your** last known address shown on **our** records, notice stating when such cancellation will be effective. In any case of termination of this policy by **us, our** mailing of notice will constitute proof of notice as of the date **we** mail it. **We** will comply with any law relating to the termination of this policy which contains different requirements. If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar. The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

A. This notice will be mailed to **you** not less than the minimum number of days required by state law if **you** have not paid **your** premium when it is due.

B. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us,** at the time notice of cancellation is mailed.

C. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us,** and any one of the following conditions exist:
   1. the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of facts pertinent to acceptance by **us;**
   2. there has been a substantial change in the covered property which increased the hazards **we** originally agreed to insure;
   3. there have been willful or negligent acts or omissions by **you** which increased the hazards **we** originally agreed to insure;

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 57 of 87 PageID #: 57

    4.   continuation of the policy would be in violation of the law; or

    5.   any person defined as **you** conceals or misrepresents any material fact or circumstance or engages in any fraudulent conduct in making a claim under this policy.

13. **Nonrenewal.** **We** may elect not to renew this policy. **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the renewal date of this policy. Proof of mailing will be sufficient proof of notice.

    If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

In Witness Whereof, **we** have caused this policy to be signed by **our** President and **our** Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

Secretary                                                      President

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 58 of 87 PageID #: 58

## TENNESSEE
## AMENDATORY ENDORSEMENT

Under **GENERAL CONDITIONS,** item 12. **Cancellation** is deleted and replaced by:

**12. Cancellation**

**You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.  If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method.

**We** may cancel this policy by delivering to **you** or by mailing to **you,** at **your** last known address shown on **our** records, notice stating when such cancellation will be effective.  In any case of termination of this policy by **us, our** mailing of notice will constitute proof of notice as of the date **we** mail it.  **We** will comply with any law relating to the termination of this policy which contains different requirements.  If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar.  The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

A.  This notice will be mailed to **you** not fewer than 10 days prior to the effective date of cancellation if **you** have not paid **your** premium when it is due.

B.  This notice will be mailed to **you** not fewer than 10 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us,** at the time notice of cancellation is mailed.

C.  This notice will be mailed to **you** not fewer than 30 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or at any time if the policy is a renewal with **us,** at the time notice of cancellation is mailed.

All other provisions of the policy apply except as modified by this endorsement.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 59 of 87 PageID #: 59

## SINKHOLE COLLAPSE COVERAGE

1.  **We** cover direct physical loss to the property covered under Section I caused by:

    **Sinkhole Collapse,** meaning only actual physical damage to such property arising out of or caused by sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar formations.

2.  Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by **sinkhole collapse.**

3.  Under **SECTION I - LOSSES WE DO NOT COVER,** the **Earth Movement** exclusion does not apply to **sinkhole collapse.**

All other provisions of this policy apply except as modified by this endorsement.

Case 3:15-cv-00556   Document 1   Filed 05/15/15   Page 60 of 87 PageID #: 60

## SINGLE DEDUCTIBLE LOSS CLAUSE

Your **package policy** is changed to add the following to the property loss deductible clause.

This clause applies upon submitting a claim for:

a.  more than one **kind of property;** or

b.  more than one item of the same **kind of property** when separate deductibles would apply;

and such property is damaged or destroyed in the same occurrence.

However, this provision does not apply if any of the requirements of a **package policy** are no longer met.

The deductible amount(s) retained by **you** will be, at **your** choice, either of the following:

A.  **Single Deductible**
    **You** will be responsible for only one deductible. The deductible that will apply is the highest deductible applicable for any item of covered property in the **loss.**

    When more than one deductible is equal to the highest, the single deductible that will apply to the **loss** is determined as follows:

    1.  When more than one **kind of property** has a deductible equal to the highest the deductible that will apply is the one with the highest earned **Deductible Savings Benefit** (if any);

    2.  When more than one **kind of property** has a deductible equal to the highest and the earned **Deductible Savings Benefits** are equal, the deductible that will apply is the one for the item with the highest amount of **loss;** or

    3.  When more than one **kind of property** has a deductible equal to the highest and no **Deductible Savings Benefit** is applicable, the deductible that will apply is the one for the item with the highest amount of **loss.**

B.  **Multiple Deductibles**
    **You** will be responsible for all the deductibles applicable to covered property in the **loss** as each would be separately applied.

**"Kind of property"** means property insured under **your** Automobile Physical Damage Coverage, Homeowners Section I Coverage or Boatowners Section I Coverage.

**"Deductible Savings Benefit"** means the deductible reductions program set forth in the **kind of property** rating rules (if applicable).

**"Package policy"** means a package of policies that is comprised of not less than one auto and not less than one owner occupied home whether a dwelling, condominium unit or leased property and is identified on the Declarations Page as either "GrandProtect" or "Combo".

All other provisions of this policy apply except as modified by this endorsement.

RECEIVED
APR 16 2015
CIRCUIT COURT

COPY

## IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

FREDERICK DARNELL and )
JUDY DARNELL, )        JURY DEMAND
)
Plaintiffs, )        Case No. 2015-170
)
v. )
)
METROPOLITAN PROPERTY AND )
CASUALTY INSURANCE COMPANY, )
)
Defendant. )
_____ )

### PLAINTIFFS' NOTICE OF SERVING PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT

**COME NOW** the Plaintiffs, **FREDERICK DARNELL** and **JUDY DARNELL**, (hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, pursuant to Rule 33.01 of the Tennessee Rules of Civil Procedure, and hereby give notice of serving Plaintiffs' First Set of Interrogatories to Defendant, **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**, which is required to provide its answers in writing under oath within thirty (30) days from the date of service.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Interrogatories have been served contemporaneously with Plaintiffs' Complaint.

> By: __/s/ Thomas W. Thompson__
> ***Smith, Kling & Thompson, P.A.***
> Thomas W. Thompson, Esquire
> thompson@smithkling.com
> BPR: 030659
> 4725 North Lois Avenue
> Tampa, Florida 33614-7046
> Telephone:     (813) 254-1800
> Facsimile:     (813) 254-1844
> Attorney for Plaintiffs

2

# INSTRUCTIONS

1.  You are instructed either to produce document as they are kept in the usual course of business or to produce document organized and labeled to correspond with the categories in these Interrogatories. Documents are to be produced in full and unexpurgated form.

2.  These Interrogatories shall be deemed continuing, if permitted by Rule, so as to require further and supplemental production in the event that the party requested to produced, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.  If any documents covered by these interrogatories are withheld by reason of a claim of privilege, work- product immunity or other ground of non-production, a list is to be furnished at the time that the documents are produced indentifying each such document for which the privilege is claimed specifically by its nature (e.g. letter, memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of these Interrogatories to which such document relates.

4.  If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.  In the event that any document called for by these Interrogatories has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6.  All objections to any category of documents to be produced pursuant to theses Interrogatories or to any definition or instruction they contain shall be in writing and delivered to Plaintiffs' counsel within the time provided in the Tennessee Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by the Court.

7.  Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8.  Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Defendants, if any.

## DEFINITIONS

A.  As used herein, "Defendant," "you" or "your" shall mean Defendant, **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,** its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.  The term "Plaintiffs" shall mean **FREDERICK DARNELL and JUDY DARNELL,** their representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities over whom they have control or have been hired, retained or employed by them to act on their behalf for any purpose whatsoever.

C.  The term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

D.  The term "identify" or "the identity of" or equivalent language with reference to a natural person shall mean to give his or her entire name, his or her last known residence address, and, if employed, the name and address of his or her employer and his or her job title or position. With reference to a person who is not an individual, such terms mean to state the full name and principal office address of such person.

E.  They terms "the identity of" or to "identify" or equivalent language shall with reference to a document mean to:

  1. Describe it in language which would be sufficient to obtain its production if used in a request for production directed to you;

  2. State its customary business description, its nature and substance with sufficient particularity to enable it to be identified, its number (if any), and its date (it any);

  3. And, identify the person(s) who generated it and its current custodians(s).

F.  The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent , independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

G.  The terms "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for

4

by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Florida Rule of Civil Procedure 1.340. Furthermore, " Document" or " documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all writing, letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, pictures, photographs, tapes, memoranda, mechanical and electronic recordings or transcripts of same, blueprints, flow sheets, calendar or diary entries, memoranda of conversations, telephonic or otherwise, memoranda of meetings or conferences, studies, reports, interoffice and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, proposition, articles, announcements, newspaper clippings, books, records, tables, book of account, ledgers, vouchers, canceled checks, check stubs, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness, and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of any document exist, each copy which is in any way not completely identical to a copy which is referenced shall also be produced.

H.     The term "communication" shall mean any transmission of information by any mean transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

I.     The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

J.     The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, with limitation."

K.     All other words have their plain ordinary meaning.

5

## INTERROGATORIES

1.     What is your name, address, telephone number, and if you are answering for someone else, your official position.

2.     State the name, official title and function, relationship with Defendant, address and telephone number of each person(s) who assisted in the preparation and formulation of the answers to these Interrogatories, and responses to the Request for Production of documents that accompany these interrogatories, and in the assembly of documents to be produced.

3.     List the names and addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues raised by the pleadings in this matter, and specify the subject matter about which the person has knowledge.

4.     Identify all policies that Defendant subscribed, issued or sold to Plaintiffs.

6

5.     On what date or dates did Defendant provide Plaintiffs with any notice of cancellation of a prior policy?

6.     On what date or dates did Defendant provide Plaintiffs with any notices of non-renewal of a prior policy?

7.     State the name, address, telephone number and title of each person(s) who had any role, whatsoever, in working on or adjusting the insurance claim(s) of Plaintiffs, **FREDERICK DARNELL and JUDY DARNELL,** at **1177 Cross Creek Drive, Franklin, TN 37067,** giving a brief description of their responsibilities regarding this matter. This interrogatory seeks the name of every employee of **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,** who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims committee. State the name(s), address(es), and telephone all documents that support or explain any of these facts.

   A.     If any person identified in the answer to the preceding Interrogatory has been promoted, demoted, or transferred during the time relevant herein, describe in detail the change in employment status of each such individual, including the circumstances of the person's employment before and after the change in status.

   B.     If any person identified in the answer to the preceding interrogatory is no longer employed with **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,** please state the date of separating, and the last-known residence address and telephone number of place of current employment of each such past employee.

7

8.   Are you aware of any other alleged sinkhole activity that has been investigated by you, anyone else on behalf of Defendant, any person, any entity, or any other insurance carrier within a two-block radius of the Plaintiffs' property during the past three (3) years? If answering affirmatively, please identify: (i) the address(es) of the area investigated; (ii) the party, including the name and address of the engineer, if you are aware, that conducted the investigation; (iii) whether or not the site contained a confirmed sinkhole; and (iv) whether or not the property was repaired, and if so, the method or repair.

9.   Prior to your determination of coverage for Plaintiffs' claim for insurance coverage, did you review any prior claims history to determine whether there have ever been any other investigations for sinkhole activity on nearby properties? If answering affirmatively, please identify: (i) the specific areas where the claims were filed; (ii) the engineering company retained by you to conduct the investigation for each such claim; and (iii) whether or not you provided coverage for the claim; and (iv) whether or not the property was repaired, and if so, the method of repair. (The term "nearby properties" is to include any property within a one-mile radius of the Plaintiffs' home).

10.  State the facts and circumstances upon which you rely for each affirmative defense set forth in your Answer and Affirmative Defenses.

8

11.    Do you contend that anything other than a covered peril under the subject homeowners' policy is, or may be, the cause, in whole or in part, of damage to the insureds' premises, for which claims have been asserted against you in this lawsuit? If so, state the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not previously notified Plaintiffs of your contention.

12.    Have you ever heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

13.    State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

9

14. For each claim for insurance benefits submitted to you by Plaintiffs during the past four (4) years, please state: (i) the date Plaintiffs first reported the loss to you; (ii) the "date of loss" or date associated with the claim; (iii) whether the claim was denied; (iv) if any payment was tendered or offered, the amount and date of such payment or offer; and (v) the policy number, coverage limits and policy period of any insurance policy in effect at the time the claim was submitted.

15. Describe comprehensively and in detail each and every way you believe that Plaintiffs have violated and/or failed to comply with any terms or conditions of the insurance policy, including but not limited to, cooperate with **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**'s investigation and adjustment of the loss, intentional concealment, omitted and/or misrepresented any material facts or circumstances. State then name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

16. Describe comprehensively and in detail the exact nature of all evidence in your possession, which may support any and all allegations of Plaintiffs' Complaint, or that may rebut any and all allegations of Plaintiffs' Complaint with respect to this pending action, and which are discoverable under the applicable Rules of Civil Procedure. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

10

17. Describe each file that was opened, created, or maintained by **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY** relating in any way to the policy or the claim, including the complete name or title of the file, its complete file number or other identifying designation, its present custodian and physical location within **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY** and its general purpose or business classification. This interrogatory seeks the identification of each "claims file" and each "underwriting file" under whatever designation or description, and every copy of duplicate thereof which may exist within **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

18. State with specificity, when and why did **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY** anticipate litigation with regard to a breach of contract cause of action in the case at issue. State the name(s), addresses(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

19. For the past three (3) years, state the total number of times you, your company, your agents, third party-claims companies retained by Defendant, or your attorney have retained the services of the expert(s) retained in the present case and please state the total amount of compensation paid to the expert(s) during the past three (3) years.

11

20.    If any Requests for Admissions in Plaintiffs' First Request for Admissions served contemporaneously with these interrogatories have been in whole or in part denied, or if anything other than an outright admission was given, please explain the facts supporting said response.  Please identify any person with knowledge regarding the reasons for said response and identify any document supporting said response.

21.    For each allegation of the Complaint which you have denied, please state the factual basis for each denial and list the name and address of the person and identify any documents supporting the facts of the denial.

22.    For each year during the five year period beginning in the fifth year preceding the date on which this complaint was filed, state:

       a.    The number of sinkhole claims in the State of Tennessee opened for property damage under residential property insurance policies issued by the defendant, regardless of whether such claims resulted in payment or whether such claims are currently open.

       b.    The number of property damage claims in the State of Tennessee opened under residential property insurance policies for damage by a peril other than sinkhole, regardless of whether such claims resulted in payment or whether such claims are currently open.

12

23. Please list all adjusters, managers, supervisors or directors that have adjusted, examined, or handled sinkhole claims for **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY** in the last five (5) years. For each, list his/her current contact information and insurance adjuster's license number.

24. Of those identified in the preceding interrogatory, has anyone ever had their license suspended or revoked or been subject to any disciplinary proceedings by any insurance regulatory body. If so, list the insurance license number of the individual, the circumstances surrounding the proceeding, the outcome of the proceeding, the date of the occurrence, and any and all relevant information pertaining to the disciplinary action.

13

**METROPOLITAN        PROPERTY     AND      CASUALTY
INSURANCE COMPANY**


By:_____


**STATE OF TENNESSEE**

**COUNTY OF**_____

    The foregoing instrument was acknowledged before me this_____ day of _____

_____, 2014, by _____who is personally known tome or who has

produced _____as identification and who did (did not) take an oath, and who

says the he/she executed the foregoing Answers to Interrogatories and that the Answers are true

and correct to the best of his/ her knowledge and belief.


                              _____

                              Notary Public (seal)


                              _____

                              Printed Name


14

### IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| FREDERICK DARNELL and<br>JUDY DARNELL, | ) | |
| | ) | **JURY DEMAND** |
| Plaintiffs, | ) | Case No. 2015-170 |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

**COME NOW** the Plaintiffs, **FREDERICK DARNELL** and **JUDY DARNELL,** (hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, and pursuant to Rule 36.01 of the Tennessee Rules of Civil Procedure, hereby request Defendant, **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,** ("Defendant"), respond to Plaintiffs' First Request for Admissions to Defendant within forty-five (45) days of the date of service and admit or deny the following:

1. That all times material hereto, Plaintiffs were and are the owner of that certain real property located at **1177 Cross Creek Drive, Franklin, TN 37067,** (hereinafter referred to as "Insured Property").

2. That Defendant issued or renewed a policy of homeowner's insurance, (hereinafter referred to as the "Policy") to Plaintiffs on the Insured Property.

3. That at all times material hereto, the subject Policy of homeowners' insurance was/is in effect for the Insured Property.

4. That the above-referenced Policy of insurance covers any and all damage to the Insured Property that was caused by sinkhole activity.

5. That the Policy is an all-risk policy.

6. That there is damage to the structure located at the Insured Property.

7. That Plaintiffs made a timely application for insurance benefits under the Policy of homeowners' insurance.

8. That Defendant has not sent to Plaintiffs a notice of nonrenewal before this claim was initiated.

9. That Defendant has not sent to Plaintiffs a notice of cancellation before this claim was initiated.

10. That Plaintiffs first reported damage to the home on or about **March 10, 2014**, while the above-referenced Policy was in effect.

11. That Defendant unilaterally retained **Barge, Waggoner, Sumner & Cannon, Inc.,** (hereinafter **"BWSC"**) to determine if a probable geotechnical cause of the distress at the Insured Property could be determined and, if so, to make repair recommendations.

12. That **BWSC** determined that the damage to the Insured Property was caused by sinkhole activity.

13. That **BWSC's** inspection of the Plaintiffs' Property was inconsistent with sinkhole testing standards.

14. That Defendant failed to consult with Plaintiffs in its retention of **BWSC** to perform the subsidence investigation.

15. That Defendant relied upon **BWSC's** reports and the recommendations contained therein to deny Plaintiffs' claim.

16. That Defendant relied upon the above-referenced reports of **BWSC** and the recommendations contained therein, in refusing to pay all benefits owed under the policy and related to Plaintiffs' claim.

17. That the duty to ensure a subsidence investigation compliant with Tennessee Statute § 56-7-130 7 lies with Defendant.

18. That Plaintiffs have complied with all conditions precedent to obtaining benefits under Plaintiffs' Policy of homeowner's insurance from Defendant.

2

19. That Plaintiffs have complied with all conditions precedent to the maintenance of this action.

20. That subject to applicable limits, Plaintiffs are entitled to the full cost of repairs of the damage to their home, including the cost of remediation of subsurface conditions and restoration of the foundation.

21. That Defendant has breached its policy of insurance by failing to pay all benefits to Plaintiffs for claim of damages to the home located at Insured Property.

22. That if the Insured Property cannot be repaired properly within the applicable coverage limits, the loss shall be deemed a total loss, and Plaintiffs are entitled to be paid an amount equal to such coverage limits.

23. That Defendant owes prejudgment interest, expert fees, costs, and attorneys' fees of this action.

24. That an expert retained by Defendant or on behalf of Defendant, during the past three (3) years, has confirmed sinkhole activity within a one (1) mile radius of the Plaintiffs' home.

25. That Defendant has failed to comply with all of the statutory requirements of Tennessee Statute 56-7-130.

26. That there exists a bona fide coverage dispute between Plaintiffs and Defendant regarding the appropriate and structurally necessary method of remediation and repair required to properly stabilize subsurface conditions and restore the foundation beneath Plaintiffs' home.

27. That Defendant has previously been found guilty of bad faith pursuant to Tennessee Statute 56-7-105.

28. That Defendant refused to pay all benefits owed under the policy and related to Plaintiffs' claim.

29. That Defendant's failure to pay for the sinkhole loss in this case rises to a level of a general business practice.

30. That the memos and letters in the claims file correctly reflect the communications between the Defendant and the other parties regarding this claim.

31. That Defendant acted with reckless disregard for the insureds' rights.

3

32. That Defendant failed to perform a statutorily compliant sinkhole investigation before denying Plaintiffs' claim.

33. That Defendant's initial claim investigation did not meet the minimum standards in investigating a claim required by Tennessee Statute § 56-7-130.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Request for Admissions has been served contemporaneously with Plaintiffs' Complaint and Responses to same are due within forty-five (45) days from the date of service.

By:___/s/ Thomas W. Thompson_____
*Smith, Kling & Thompson, P.A.*
Thomas W. Thompson, Esquire
thompson@smithkling.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:    (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiffs

4

RECEIVED

APR 1 6 2015

CIRCUIT COURT


IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| FREDERICK DARNELL and | ) | |
| JUDY DARNELL, | ) | **JURY DEMAND** |
| | ) | |
| Plaintiffs, | ) | Case No. 2015-170 |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT

COME NOW the Plaintiffs, **FREDERICK DARNELL** and **JUDY DARNELL,** (hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, and pursuant to Rule 34.01 of the Tennessee Rules of Civil Procedure, hereby request that Defendant, **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,** produce for inspection, copying or photographing at the office of Thompson Trial Group, P.A., 4725 N. Lois Avenue, Tampa, Florida 33614 within thirty (30) days from the date of service, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

### I. DEFINITIONS AND INSTRUCTIONS

A. As used herein, "Defendant", "you" or "your" shall mean Defendant, **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,** its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants,

auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.    As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra-and interoffice communications, correspondence, handwritten and/or typewritten notes, pamphlets , diaries, records of any kind, sound recordings, contracts, agreements, books, letters. reports, catalogues, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrap books, notebooks, drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records kept by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however, produced or reproduced. If multiple copies of a document exist, each copy which is any way not completely identical to a copy which is being produced should also be produced.

C.    As employed herein, "all documents" shall refer to and shall include every document as above-defined, known to you and every such document or thing that can be located or discovered by reasonable diligent efforts, whether or not originally in your custody, possession or control.

2

D.    When producing the requested documents and things, please produce same as they are kept in the usual course or business or label them to correspondence with the categories of this request for production.

E.    If you claim a privilege as to any documents or thing encompassed by this request for production, you are requested to make the claim expressly and describe the nature of the documents, communications or things not produced or disclosed in manner that without revealing information itself protection claimed.

F.    The words "relating to" mean concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

## II.    DOCUMENTS TO BE PRODUCED

1.    All reports, drafts, charts, drawings, diagrams, or memoranda showing or intending to show the cause of damage to Plaintiffs' real property located at **1177 Cross Creek Drive, Franklin, TN 37067**, (hereinafter referred to as the "Property") or the potential methods of repair in connection therewith.

2.    A certified copy of the Plaintiffs' all-risk insurance policy that was in effect at the time Plaintiffs' claim was made.

3.    All applications for insurance or corresponding documents that relate to Plaintiffs' procurement of the subject policy.

4.    The entire underwriting file.

5.    All notices of cancellation for any policy issued to Plaintiffs by Defendant.

6.    All notices of non-renewal for any policy issued to Plaintiffs by Defendant.

7.    All field logs, notes, or other memoranda relating to or referencing any engineering or geological consultant's findings or recommendations in connection with the Plaintiffs' Property.

3

8.    All documents relating to or referencing the damage to Plaintiffs' Property, which were considered by any individual or entity, and any related cost estimates in connection therewith.

9.    All photographs, logs, and/or videos taken of the Plaintiffs' Property with regard to any inspection or testing performed at the request of Defendant or at the request of any of Defendant's representatives.

10.    All documents relating to or referencing any communication between Plaintiffs and Defendant, including, but not limited to, correspondence or notices in connection with Plaintiffs' claim.

11.    All documents signed by Plaintiffs and relating to this action.

12.    Any documents, notes, memoranda, diaries, reports, photographs, video, etc., of any person who visited the Property and/or spoke with Plaintiff on behalf of Defendant, at the request of Defendant, or at the request of any Defendant's representatives.

13.    All documents used by you in making the decision to tender or to offer to tender any amount to Plaintiffs in connection with Plaintiffs' claim.

14.    All documents used by you in making the decision whether coverage would be provided with respect to Plaintiffs' claim.

15.    All documents used by you in making the decision to elect to repair or repair the Plaintiffs' Property in connection with Plaintiffs' claim.

16.    All reports, memoranda, or other documents regarding the existence of any alleged sinkhole activity investigated by Defendant or their representatives within a two block radius of the Property.

17.    All reports, memoranda, or other documents relating to any ground remediation or repair work, regardless of whether such repairs were ever performed, arising out of alleged sinkhole activity at any neighboring properties within a one-mile radius of the subject Property.

18.    All documents, including, but not limited to, prior claims documentation submitted to you by other insureds, which were consulted to assist you in determining whether there have been any other investigations for sinkhole activity at neighboring properties within a two-mile radius of the subject Property.

19.    All documents provided to Defendant's geological or engineering experts to assist them in their investigation of this claim.

4

20.     All statements, forms, recordings, tapes, or transcripts of recordings of statements made by Plaintiffs with regard to this claim.

21.     All documents which support, refute, or otherwise relate to Defendant's claims or defenses in this action.

22.     All documents relating to or referencing any communication by Defendant, to any testing laboratory, consultant, engineer or engineering firm, geologist or geological firm, building contractor, or any expert, including but not limited to, correspondence, memoranda and notes prepared in connection with this claim.

23.     All documents for any construction/repair estimates or construction/repair proposals regarding the Plaintiffs' Property.

24.     All documents including IRS documents, computer printouts, or notes, indicating the total number of times that any of the expert/s retained by you, your company, your third-party claims company, or your attorney in relation to Plaintiffs' sinkhole claim or any expert(s) on Defendant's behalf that has examined, visited, performed any work or any testing of any kind on Plaintiffs' property, have been retained by you, your company, your third-party claims company, or your attorney in the past three years and the total amount of compensation paid to said expert(s) for work in the past three (3) years.

25.     All claims file documents regarding Plaintiffs' claim generated prior to determination regarding Plaintiffs' claim.

26.     All documents evidencing the reserve amount set aside for Plaintiffs' claim.

27.     All documents identified or referred to in Plaintiffs' First Set of Interrogatories.

28.     All documents that relate to the interpretation or application of the subject language at issue in Plaintiffs' claim.

29.     All documents relating to your past and present document destruction policies.

30.     All documents relating to premiums that Plaintiffs paid you for policies issued.

31.     All documents relating to Plaintiffs or Plaintiffs' property, which you obtained from any source other than Plaintiffs.

32.     All claims manuals for adjustment of sinkhole claims, in both printed and electronic format. The claims manual must be produced in its entirety including, but in no way limited to those sections providing for:

5

      a.   Property loss handling procedures.
      b.   Supervisors and managers manuals.
      c.   Data processing and system manuals, including both intranet and e-mail methods.
      d.   Historical copies, out of date copies, and previous editions, kept on hand, and any procedures relating to the retention of claims manuals and the procedures for updating claims manuals.

33.     Documents, manuals, and reports relating to any programs to control sinkhole claim costs, including indemnity and allocated/unallocated claim costs.

34.     Training materials in every format, including videotapes, recordings, and written materials for:

      a.      Property loss adjusting.

      b.      Sinkhole loss adjusting.

      c.      Disputed claims.

      d.      The hiring, supervision and management of outside experts or investigators.

      e.      Coverage interpretation.

      f.      Estimating, or any aspect of estimating, including determination of property values, repair of property, reconstruction of property, and cost estimating.

35.     Employee handbooks including:

      a.      Orientation manuals or booklets.

      b.      Benefits and disability plans.

      c.      Profit sharing, stock ownership, and incentive plans.

      d.      Company philosophies, policies and mission statements.

      e.      Sinkhole adjustment handbooks.

36.     Records and copies of all public complaints against Defendant.

37.     All claims files relating to any bad faith litigation against Defendant in the State of Tennessee within the past thirty-six (36) months.

6

38.    All forms, publications, and manuals related specifically to the claims staff and personnel.

39.    All guides for letter writing and correspondence, including any index of form letters and any e-mail programs or manuals.

40.    Company "newsletters" regarding sinkhole claims whether in paper or electronic format, including:

      a.     Company-wide newsletters.

      b.     Regional and local newsletters.

      c.     Video-conferences and video magazines.

      d.     Newsletters directed specifically to claims.

      e.     Newsletters directed to sales or agent distribution.

41.    Copies of any and all loss control, engineering, or risk inspection services rendered for the risk for a property which underlies this litigation.

42.    A copy of all agency manuals concerning sinkhole claims, including, but in no way limited to:

      a.     Instructions to agents for claims handling, communications, handling of complaints and disputed claims, and handling of insurance premiums.

      b.     Training for the sale of insurance policies on behalf of Defendant.

43.    Procedures, policies and instructions for any "claim committee," including, with regard to the specific sinkhole claim which underlies this litigation:

      a.     The names of any and all committee members who have met, at any time, with regard to the claim which underlies this litigation.

      b.     The reports issued by any claim committee.

      c.     Documentation, including contemporaneous notes, of any "claim committee" deliberations.

44.    Identification of all corporate liability insurance for errors in omission or bad faith,

7

including:

  a.   Copies of all such insurance policies.

  b.   Any reports and/or correspondence to or from such insurers with regard to this action.

  c.   Any report and/or correspondence to or from such liability insurers, whether or not related to this claim.

  d.   Copies of all investigation and adjustment files relating to this litigation.

  e.   Copies of all investigation and adjustment files whether or not related to this litigation.

45.   Any and all profit statements for the last five years.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Request for Production has been served contemporaneously with the Complaint and Responses to same are due within thirty (30) days from the date of service.

By:   /s/ Thomas W. Thompson
***Smith, Kling & Thompson, P.A.***
Thomas W. Thompson, Esquire
thompson@smithkling.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:      (813) 254-1800
Facsimile:      (813) 254-1844
Attorney for Plaintiffs

8